CCC:AT
F. #2022R00047

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

ADAM KAPLAN and
DANIEL KAPLAN,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE GRAND JURY CHARGES:

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   JUL 1 8 2023   ★

LONG ISLAND OFFICE

INDICTMENT

Cr. No. **CR   23   293**

(T. 15, U.S.C., §§ 80b-6, 80b-14 and 80b-17; T. 18, U.S.C., §§ 981(a)(1)(C), 982(a)(1), 982(b)(1), 1343, 1349, 1957(a), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

**BROWN, J.**

**WICKS, M.J.**

INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    The Defendants and Relevant Entities

1.    The Financial Services Firm, an entity the identity of which is known to the Grand Jury, was a Securities and Exchange Commission ("SEC")-registered investment firm that, among other things, employed financial advisers to manage the investments of its clients.

2.    Bank-1, an entity the identity of which is known to the Grand Jury, was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC"). Bank-1 conducted business in several states, including New York.

3.    Bank-2, an entity the identity of which is known to the Grand Jury, was a financial institution, the deposits of which were insured by the FDIC. Bank-2 conducted business in several states, including New York.

2

4.     The Luxury Goods Boutique, an entity the identity of which is known to the Grand Jury, was a boutique located in Miami, Florida that sold luxury goods.

5.     The defendants ADAM KAPLAN and DANIEL KAPLAN (collectively, the "KAPLANS"), are twin brothers and residents of Great Neck, New York.   The KAPLANS were associated as investment adviser representatives with the Financial Services Firm from in or about and between May 2018 and July 2021, both dates being approximate and inclusive. Generally, the KAPLANS each made investment-related recommendations to their clients; had discretion, including trading authority, over their clients' accounts; ordered trades; and managed their clients' investment portfolios.   After leaving the Financial Services Firm, the KAPLANS continued to act as investment advisers to their clients.

II.    The Fraud Scheme Victims

6.     In or about and between May 2018 and November 2022, both dates being approximate and inclusive, the defendants ADAM KAPLAN and DANIEL KAPLAN defrauded at least 50 clients of the Financial Services Firm (the "Victims"), including some elderly and disabled victims, of at least $5 million.

7.     Victim-1, an individual whose identity is known to the Grand Jury, was a resident of New York, New York and was a client of and had assets managed by the defendants ADAM KAPLAN and DANIEL KAPLAN.

8.     Victim-2, an individual whose identity is known to the Grand Jury, was a resident of Brooklyn, New York and was a client of and had assets managed by the defendants ADAM KAPLAN and DANIEL KAPLAN.

9.      Victim-3, an individual whose identity is known to the Grand Jury, was a resident of Brooklyn, New York and was a client of and had assets managed by the defendants ADAM KAPLAN and DANIEL KAPLAN.

10.     Victim-4, an individual whose identity is known to the Grand Jury, was a resident of Washington, D.C. and was a client of and had assets managed by the defendants ADAM KAPLAN and DANIEL KAPLAN.

11.     Victim-5, an individual whose identity is known to the Grand Jury, was a resident of Livingston, New Jersey and was a client of and had assets managed by the defendants ADAM KAPLAN and DANIEL KAPLAN.

12.     Victim-6, Victim-7 and Victim-8 are individuals whose identities are known to the Grand Jury and who are residents of Scottsdale, Arizona.   Victim-6, Victim-7 and Victim-8 were family members and each beneficiaries with a trust account in their father's name (the "Trust Account").   Victim-6, Victim-7, Victim-8 and the Trust Account were clients of and had assets managed by the defendants ADAM KAPLAN and DANIEL KAPLAN.

III.    The Fraudulent Scheme

13.     In or about and between May 2018 and November 2022, both dates being approximate and inclusive, the defendants ADAM KAPLAN and DANIEL KAPLAN engaged in a scheme to defraud the Victims in a number of ways.    First, while the KAPLANS were associated with the Financial Services Firm, they caused the Victims to be fraudulently overbilled for advisory fees.   Second, the KAPLANS used access to the Victims' personal information to misappropriate over $4 million from the Victims for their personal benefit. Finally, the KAPLANS created false documents and made material misrepresentations to the Victims to conceal their misappropriation of the Victims' funds.

4

A.    The Overbilling of Advisory Fees Scheme

14.    While the defendants ADAM KAPLAN and DANIEL KAPLAN were associated with the Financial Services Firm, they caused many of the Victims to be fraudulently overbilled for advisory fees.   During that time, the Financial Services Firm charged the Victims an advisory fee that was based on a percentage of the Victims' assets under management.   The amount of the fee was set forth in a written agreement between the client and the Financial Services Firm (the "Advisory Agreement").   As the Victims' investment advisers, the KAPLANS received at least 80% of those advisory fees.   The KAPLANS submitted signed, final versions of the Advisory Agreements to the Financial Services Firm.   Generally, the fee was billed to the Victims by the Financial Services Firm on a quarterly basis and was taken directly from the Victims' brokerage accounts.

15.    In order to perpetrate their fraudulent scheme, the defendants ADAM KAPLAN and DANIEL KAPLAN orally agreed with Victims to charge a certain advisory fee, typically 1% or less per year.   The KAPLANS then fraudulently caused the Victims to pay higher advisory fees by having the Victims sign Advisory Agreements with the fee amount section left blank.   After the Victims signed the Advisory Agreements, the KAPLANS inserted advisory fees that were higher than what they orally promised to charge the Victims, typically over 2%.   This caused the Financial Services Firm to charge the Victims higher, fraudulently inflated advisory fees.   In total, the KAPLANS caused the Victims to be overbilled by more than $540,000, of which the KAPLANS received at least 80%.

B.    The Misappropriation Scheme

16.    In addition to the overbilling scheme, in or about and between May 2018 and November 2022, both dates being approximate and inclusive, the defendants ADAM

KAPLAN and DANIEL KAPLAN misappropriated millions of dollars from the Victims through various fraudulent means, including through electronic charges that they fraudulently applied to the Victims' credit cards and bank accounts. The KAPLANS also forged checks from the Victims' accounts and deposited them into their own bank accounts.

17.     Purportedly in connection with providing the Victims with investment adviser services, the defendants ADAM KAPLAN and DANIEL KAPLAN requested, and many of the Victims provided, the KAPLANS with the Victims' brokerage accounts, personal bank accounts, and/or their personal credit card information. Although the KAPLANS informed the Victims that their funds would be invested, the KAPLANS instead misappropriated the Victims' personal information to fraudulently obtain approximately $4.5 million of the Victims' funds. The KAPLANS then used the funds to, among other things, pay personal expenses and purchase goods, including from the Luxury Goods Boutique.

18.     If Victims inquired about the fraudulent charges, the defendants ADAM KAPLAN and DANIEL KAPLAN falsely told some Victims that the fraudulent charges were for advisory fees purportedly owed by Victims. These representations were false because, as the KAPLANS knew, the Victims did not owe any additional fees, as the Financial Services Firm had already charged the Victims for those fees.

19.     The defendants ADAM KAPLAN and DANIEL KAPLAN also falsely told some Victims that the fraudulent charges represented investments even though the KAPLANS knew that they were misappropriating the Victims' funds for their own benefit and were not in fact investing the misappropriated funds for the Victims. In total, the KAPLANS misappropriated at least $4 million.

C.    The Concealment Scheme

20.    In order to conceal their fraud and misappropriation of the Victims' funds, the defendants ADAM KAPLAN and DANIEL KAPLAN made additional misrepresentations to some of the Victims and to their financial institutions.   In some instances, Victims contacted the fraud departments of their financial institutions to challenge fraudulent transactions instituted by the KAPLANS, including at Bank-1 and Bank-2.   On these occasions, the KAPLANS created, without the knowledge of the Victims, fictitious agreements with the Victims that purportedly authorized the defendants to charge the Victims' accounts for the specific charges that the Victims challenged in their fraud claim.   The KAPLANS also forged the Victims' signatures on these agreements without the Victims' authorization.   The KAPLANS then sent those fictitious agreements to the financial institutions so that the financial institutions would deny the Victims' fraud claims.   Due to the fictitious documentation provided by the KAPLANS, the financial institutions denied the Victims' fraud claims, including Victim-1's fraud claim.

21.    The defendants ADAM KAPLAN and DANIEL KAPLAN also made payments to the Victims to conceal their fraudulent activities.   In some instances, when Victims complained regarding missing funds that the KAPLANS had misappropriated, the KAPLANS paid the Victims back using funds that were misappropriated from other Victims.

COUNT ONE
(Conspiracy to Commit Wire Fraud)

22.    The allegations contained in paragraphs one through 21 are realleged and incorporated as if fully set forth in this paragraph.

23.    In or about and between May 2018 and November 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ADAM KAPLAN and DANIEL KAPLAN, together with others, did knowingly and

intentionally conspire to devise a scheme and artifice to defraud the Victims, and to obtain

money and property from them by means of one or more materially false and fraudulent

pretenses, representations and promises, and for the purpose of executing such scheme and

artifice, to transmit and cause to be transmitted by means of wire communication in interstate

and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United

States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNTS TWO THROUGH ELEVEN
(Wire Fraud)

24.    The allegations contained in paragraphs one through 21 are realleged and

incorporated as if fully set forth in this paragraph.

25.    On or about the dates set forth below, within the Eastern District of New

York and elsewhere, the defendants ADAM KAPLAN and DANIEL KAPLAN did knowingly

and intentionally devise a scheme and artifice to defraud Victim-1, Victim-2, Victim-3, Victim-4

and Victim-5, and to obtain money and property from Victim-1, Victim-2, Victim-3, Victim-4

and Victim-5 by means of one or more materially false and fraudulent pretenses, representations

and promises, and for the purpose of executing such scheme and artifice did transmit and cause

to be transmitted by means of wire communication in interstate and foreign commerce, writings,

signs, signals, pictures and sounds, to wit:

| Count | Approx. Date of Wire Transmission | Description of Wire Transmission |
|---|---|---|
| TWO | 01/11/2021 | Electronic charge to Victim-1's bank account for $10,010. |
| THREE | 12/02/2021 | Electronic charge to Victim-1's bank account for $198.99. |
| FOUR | 05/24/2021 | Electronic charge to Victim-2's bank account for $6,261.56. |

| Count | Approx. Date of Wire Transmission | Description of Wire Transmission |
|---|---|---|
| FIVE | 07/02/2021 | Electronic charge to Victim-2's bank account for $15,150.15. |
| SIX | 07/11/2021 | Electronic charge to Victim-3's bank account for $59.49. |
| SEVEN | 09/03/2021 | Electronic charge to Victim-3's bank account for $65.49. |
| EIGHT | 10/30/2019 | Electronic charge to Victim-4's bank account for $4,265.36. |
| NINE | 03/25/2020 | Electronic charge to Victim-4's bank account for $2,000. |
| TEN | 03/04/2022 | Electronic charge to Victim-5's bank account for $12,000. |
| ELEVEN | 04/12/2022 | Electronic charge to Victim-5's bank account for $39,510. |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNT TWELVE
(Investment Advisor Fraud)

26.     The allegations contained in paragraphs one through 21 are realleged and incorporated as if fully set forth in this paragraph.

27.     In or about and between May 2018 and November 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ADAM KAPLAN and DANIEL KAPLAN, together with others, did knowingly and willfully use and cause to be used, the mails and means and instrumentalities of interstate commerce, directly and indirectly: (a) to employ one or more devices, schemes and artifices to defraud the Victims; (b) engage in one or more transactions, practices and courses of business which operated as a fraud and deceit upon the Victims; and (c) to engage in one or more acts, practices and courses of business which were fraudulent, deceptive and manipulative.

(Title 15, United States Code, Sections 80b-6, 80b-14 and 80b-17; Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNTS THIRTEEN THROUGH SIXTEEN
(Money Laundering)

28.     The allegations contained in paragraphs one through 21 are realleged and incorporated as if fully set forth in this paragraph.

29.     On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendants ADAM KAPLAN and DANIEL KAPLAN, together with others, did knowingly and intentionally engage in one or more monetary transactions in and affecting interstate commerce in criminally derived property of a value greater than $10,000, as set forth in the chart below, and that was derived from specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343:

| Count | Approx. Date of Transaction | Description of Transaction |
|---|---|---|
| THIRTEEEN | 05/18/2020 | Deposit of forged check from Trust Account in the amount of $23,000 into DANIEL KAPLAN's bank account. |
| FOURTEEN | 06/02/2020 | Deposit of forged check from Trust Account in the amount of $10,222.22 into DANIEL KAPLAN's bank account. |
| FIFTEEN | 03/31/2021 | Wire transfer of $20,000, which contained Victims' funds, to the Luxury Goods Boutique |
| SIXTEEN | 04/01/2021 | Wire transfer of $48,000, which contained Victims' funds, to the Luxury Goods Boutique |

(Title 18, United States Code, Sections 1957(a), 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS ONE THROUGH ELEVEN

30.     The United States hereby gives notice to the defendants that, upon their conviction of any of the offenses charged in Counts One through Eleven, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to

10

forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or

indirectly as a result of such offenses.

31.    If any of the above-described forfeitable property, as a result of any act or

omission of the defendants:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) to

seek forfeiture of any other property of the defendants up to the value of the forfeitable property

described in this forfeiture allegation.

(Title 18, United States Code, Sections 981(a)(1)(C); Title 21, United States

Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS THIRTEEN THROUGH SIXTEEN

32.    The United States hereby gives notice to the defendants that, upon their

conviction of any of the offenses charged in Counts Thirteen through Sixteen, the government

will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which

requires any person convicted of such offenses to forfeit any property, real or personal, involved

in such offenses, or any property traceable to such property.

33.    If any of the above-described forfeitable property, as a result of any act or

omission of the defendants:

11

      (a)     cannot be located upon the exercise of due diligence;

      (b)     has been transferred or sold to, or deposited with, a third party;

      (c)     has been placed beyond the jurisdiction of the court;

      (d)     has been substantially diminished in value; or

      (e)     has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as

incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

property of the defendants up to the value of the forfeitable property described in this forfeiture

allegation.

      (Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United

States Code, Section 853(p))

A TRUE BILL



_____
FOREPERSON

By CPokorny, Assistant U.S. Attorney
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.#: 2022R00047

FORM DBD-34
JUN. 85

No.

UNITED STATES DISTRICT COURT
EASTERN *District of* NEW YORK
CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

ADAM KAPLAN AND DANIEL KAPLAN,

Defendants.

# INDICTMENT

(T. 15, U.S.C., §§ 80b-6, 80b-14 and 80b-17; T. 18, U.S.C., §§
981(a)(1)(C), 982(a)(1), 982(b)(1), 1343, 1349, 1957(a), 2 and 3551 *et seq.*;
T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

*Foreperson*

*Filed in open court this* _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ *day,*

*of* _ _ _ _ _ _ _ _ _ _ _ _ _ *A.D. 20* _ _ _ _ _

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

*Clerk*

*Bail, $* _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Adam R. Toporovsky, Assistant U.S. Attorney (631) 715-7846*