```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA, . Criminal No. 23-cr-00293-JMA-JMW
                          .
            Vs.           .
                          . 100 Federal Plaza
ADAM KAPLAN and           . Central Islip, NY  11722
DANIEL KAPLAN             .
                          . DATE: July 25, 2023
. . . . . . . . . . . . . .

                    TRANSCRIPT OF ARRAIGNMENT
                 BEFORE HONORABLE JAMES M. WICKS
                  UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:        UNITED STATES ATTORNEYS OFFICE
                           EASTERN DISTRICT OF NEW YORK
                           BY:   ANTHONY BAGNUOLA, ESQ.
                           271 Cadman Plaza East
                           Brooklyn,  NY   11201


For Defendant:             SHER TREMONTE, LLP
Daniel Kaplan              BY:  MICHAEL TREMONTE, ESQ.
                           41 Madison Avenue, 41st Floor
                           New York, NY  10010


For Defendant:             MORRISON COHEN, LLP
Adam Kaplan                BY:  ERIC CREIZMAN, ESQ.
                               (Telephonically)
                           909 Third Avenue, Fl. 27
                           New York,  NY  10022




Proceedings recorded by electronic sound recording, transcript
               produced by transcription service.
```

**TRACY GRIBBEN TRANSCRIPTION, LLC**
**PO BOX 688**
**Middletown, NJ 07748**
**(732) 263-0044    Fax No. 732-865-7179**
**800 603-6212**
**www.tgribbentranscription.com**

2

1                          I N D E X

2

3                                          PAGE

4    ARRAIGNMENT                            9

5    BAIL CONDITIONS                        13/29

6

7    SURETOR, IDIDA KAPLAN, SWORN           20

8    SURETOR, STUART KAPLAN, SWORN          21

9

10   WITNESSES

11   STUART KAPLAN

12        Examination by the Court          22

13   IDIDA KAPLAN

14        Examination by the Court          23

15

16   SPEEDY TRIAL WAIVER                    35

17

18

19

20

21

22

23

24

25

1          THE CLERK:  Calling criminal case 2023-293, United

2  States of America versus Adam Kaplan and Daniel Kaplan.

3  Counsel, please state your appearances for the record.

4          MR. BAGNUOLA:  Good afternoon, Your Honor, Anthony

5  Bagnuola for the United States. To my left is FBI Special Agent

6  John Iannuzzi.  And to his left is US Pretrial Services

7  Officer, Christina Deprimo. Good afternoon, Judge.

8          THE COURT:  And good afternoon to all of you.

9          MR. TREMONTE:  Good afternoon, Your Honor, Michael

10 Tremonte of Sher Tremonte LLP. To my right is my client Daniel

11 Kaplan. To Daniel Kaplan's right is his brother, Adam Kaplan,

12 represented by Mr. Creizman who is on the phone.

13         THE COURT:  Okay. Good afternoon to all of you. And

14 --

15         MR. CREIZMAN:  (indiscernible)

16         THE COURT:  Go ahead, Mr. Creizman.

17         MR. CREIZMAN:  I just wanted to say, I'm appearing

18 (indiscernible) for Adam Kaplan, I'm from the firm of Morrison

19 Cohen.

20         THE COURT:  All right, good afternoon, as well.  All

21 right, Mr. Creizman, could you just state name again, we just

22 moved the microphone a little bit closer to the phone.

23         MR. CREIZMAN:  Sure, It's Eric, E R I C, Creizman, C

24 R E I Z M A N.  Eric Creizman.

25         THE COURT:  Okay, great, thank you.

1          MR. CREIZMAN:  Thank you.

2          THE COURT:  And can everyone at counsel table hear

3  Mr. Creizman?

4          MR. TREMONTE:  Yes, Your Honor.

5          THE COURT:  And Mr. Bagnuola, you as well?

6          MR. BAGNUOLA:  Yes, Your Honor.

7          THE COURT:  Okay, More importantly, both Mr. Kaplans,

8  are you able to hear him?

9          DEFENDANT ADAM KAPLAN: Yes.

10          DEFENDANT DANIEL KAPLAN: Yes.

11          THE COURT:  All right, just do me a favor, you just

12  use the mic.  And you don't have to -- nobody has to stand or

13  rise, just use the mic, make sure the mics are on when we

14  speak, all right?

15          Okay, so good afternoon, I am Magistrate Judge Wicks,

16  and you're both here today before me because you're charged

17  with certain crimes in an indictment that's been filed against

18  both of you.  Have you both been provided a copy of the

19  indictment?

20          UNIDENTIFIED DEFENDANT:  No.

21          THE COURT:  No, all right.

22          MR. TREMONTE:  Your Honor, the indictment was emailed

23  to counsel, as we were on our way to court today.

24          THE COURT:  All right.

25          MR. TREMONTE:  If I may have just two minutes with --

1           THE COURT:  I can give you more than two minutes.

2    You can take as much as you need.  And we'll silence the mics

3    and you can spend as much time as you need to go over the

4    indictment.

5           MR. TREMONTE:  Thank you.

6           THE COURT:  All right?

7           MR. TREMONTE:  Yes.

8           THE COURT:  Let me ask you this though, Mr. Creizman,

9    have you reviewed the indictment?

10          MR. CREIZMAN:  I have no.  I've been driving from

11   Asbury Park, New Jersey, actually.  So I'm still, I've been

12   driving the whole time.

13          THE COURT:  All right.  Let me ask you this then.  Is

14   it possible, and I look at the Marshals for this, if counsel

15   and clients can go in the attorney's room right outside here.

16   And perhaps get MR. Creizman on his cell phone and you can have

17   a call, all four of you.  Is that acceptable?

18          MR. TREMONTE:  It is for the defense, Your Honor.

19          OFFICER:  (indiscernible)

20          THE COURT:  You tell me, I look to you.

21          OFFICER:  (indiscernible)

22          THE COURT:  Wherever you want.  Okay.  As long as

23   they get reception and can call.

24          OFFICER:  Yes.

25          MR. TREMONTE:  Thank you.

1                        (Recording silenced @ 4:31:17)

2                            (Recording resumed @ 4:37:01)

3              THE COURT:  Okay, Mr. Creizman, we're just about

4     ready to go, although I lost my courtroom deputy. She'll be

5     back in in a minute.  Can you hear me okay?  All right, can you

6     hear us, Mr. Creizman?

7              THE CLERK:  He may be trying to join the call.

8              THE COURT:  He did, he joined already.

9              THE CLERK:  Oh he did.

10             THE COURT:  Yes.

11             MR. CREIZMAN: I'm on, I'm on, sorry.  I hear you.

12             THE COURT:  You can hear us okay?  Mr. Creizman, can

13    you hear us okay?

14             MR. CREIZMAN:  I do, thank you.

15             THE COURT:  Okay.  Okay, ready to proceed?

16             MR. TREMONTE:  Yes, Your Honor.

17             MR. BAGNUOLA:  Yes, Your Honor.

18             THE COURT:  Okay, did you have, Mr. Tremonte, did you

19    have sufficient time to speak with both of the defendants?

20             MR. TREMONTE:  Yes, Your Honor.

21             THE COURT:  Okay.  And Mr. Creizman, did you have an

22    opportunity to participate in that discussion?

23             MR. CREIZMAN:  Yes, I did.

24             THE COURT:  Okay, and did you have sufficient time to

25    review the indictment with your clients, both of you, Mr.

1  Creizman first?

2              MR. CREIZMAN:  Yes, Your Honor.

3              THE COURT:  All right, and Mr. Tremonte?

4              MR. TREMONTE:  Yes, we did, Your Honor.

5              THE COURT:  Okay.  And I understand since Mr.

6  Creizman is stuck in traffic and he's participating by

7  telephone, is that agreeable to the Government, that Mr.

8  Creizman participates by phone?

9              MR. BAGNUOLA: Absolutely, Your Honor.

10             THE COURT:  All right. And Mr. Adam Kaplan, your

11 lawyer is on the phone, as you've heard, and he's stuck in

12 traffic.  Are you agreeing to allow him to participate by

13 phone?

14             DEFENDANT ADAM KAPLAN:  Yes.

15             THE COURT:  You consent to that?

16             DEFENDANT ADAM KAPLAN:  Yes.

17             THE COURT:  All right.  I understand that Mr.

18 Tremonte, Mr. Creizman has given you authority to sign papers

19 on his behalf for Mr. Adam Kaplan in this proceeding?

20             MR. TREMONTE:  Yes he has, Your Honor.

21             THE COURT:  All right.  And Mr. Adam Kaplan, you,

22 that's acceptable to you?

23             DEFENDANT ADAM KAPLAN:  Yes.

24             THE COURT:  To have Mr. Tremonte, for purposes of

25 this proceeding, sign papers on your lawyer's behalf?

1          DEFENDANT ADAM KAPLAN:  Yes.

2          THE COURT:  Okay, Mr. Creizman, and that's acceptable

3  to you too, right?

4          MR. CREIZMAN:  Yes, Your Honor.

5          THE COURT:  Okay, all right.  So let's proceed.  All

6  right, so now, both Adam and Daniel, if you don't mind me

7  calling you by your first names, because you have the same last

8  names, do you -- have you had the opportunity to review the

9  indictment Adam?

10          DEFENDANT ADAM KAPLAN:  Yes.

11          THE COURT:  All right, Daniel?

12          DEFENDANT DANIEL KAPLAN:  Yes.

13          THE COURT:  Okay, have you both had sufficient time

14  to review it with your lawyers?

15          DEFENDANT ADAM KAPLAN:  Yes.

16          DEFENDANT DANIEL KAPLAN:  Yes.

17          THE COURT:  Okay.  All right, so we're here for the

18  initial appearance on the indictment and the arraignment on the

19  indictment.  And what that means is several things. First, I'm

20  going to advise you of the charges in the indictment, which

21  you've just gone over with your lawyers.  Second, I'll advise

22  you of your rights with respect to the indictment.  I'll then

23  take your plea to the charges of the indictment. And then we'll

24  consider bail or detention.

25          The indictment was sealed previously. I issued an

1  order earlier today unsealing it.  Mr. Bagnuola, you got that

2  order already?

3          MR. BAGNUOLA:  Yes, Your Honor.

4          THE COURT:  Okay, so it is unsealed.  Okay, so first

5  I'm going to explain your rights.  You have certain

6  constitutional rights.  Of course first and foremost you have

7  the right to remain silent.  You're not required to make any

8  statements whatsoever. Even if you've already started to make

9  statements you don't have to continue.  You can stop, you can

10 stop at any time, you don't have to make any further

11 statements.  You don't have to say anything more.  Any

12 statements that you've made or make in the future could be used

13 against you.  Do you understand that, Adam?

14         DEFENDANT ADAM KAPLAN:  Yes.

15         THE COURT:  All right, Daniel?

16         DEFENDANT DANIEL KAPLAN:  Yes.

17         THE COURT:  Okay. Any questions to me, as to your

18 right to remain silent?

19         DEFENDANT ADAM KAPLAN:  No.

20         DEFENDANT DANIEL KAPLAN:  No.

21         THE COURT:  All right.  You have the right to be

22 represented by a lawyer, by counsel, during all phases of this

23 court proceeding, both today and throughout the entire case.

24 And during any and all questioning by authorities.  So you have

25 the right to hire your own attorney, or if it comes a point in

1  time where you can't afford an attorney, I will appoint one for

2  you.  The Court will appoint one for you for every step of the

3  case.  Do you understand that?

4             DEFENDANT DANIEL KAPLAN:  Yes.

5             THE COURT:  Okay.  And Daniel? Oh that was Daniel.

6  Adam?

7             DEFENDANT ADAM KAPLAN:  Yes.

8             THE COURT:  Okay. And today, Daniel, your lawyer is

9  Mr. Tremonte, correct?

10            DEFENDANT DANIEL KAPLAN:  Yes.

11            THE COURT:  And you have had an opportunity to speak

12 with him about today's proceedings?

13            DEFENDANT DANIEL KAPLAN:  Yes.

14            THE COURT:  All right. And how about you, Adam?  Have

15 you had sufficient opportunity to speak with Mr. Creizman about

16 today's proceedings?

17            DEFENDANT ADAM KAPLAN:  Yes.

18            THE COURT:  Okay.  Now, you have the right to be

19 released either conditionally or unconditionally, pending

20 trial, unless I find that there are no conditions that would

21 reasonably assure your presence at future court appearances, or

22 the safety of the community is at risk.  If you're not citizens

23 of the United States, you have the right to have a law

24 enforcement official notify a consular of your country of

25 origin that you've been arrested. Do you understand your rights

1  as I've explained them to you so far?

2          DEFENDANT ADAM KAPLAN:  Yes.

3          DEFENDANT DANIEL KAPLAN:  Yes.

4          THE COURT:  All right, any questions of me so far

5  about that?

6          DEFENDANT ADAM KAPLAN:  No.

7          DEFENDANT DANIEL KAPLAN:  No.

8          THE COURT:  All right.  Mr. Bagnuola, under Rule

9  5(f), Criminal Rules of Criminal Procedure, I do direct the

10 prosecution to comply with its obligations under Brady against

11 Maryland and progeny, and that is to disclose to the defense

12 all information, admissible or not, that might be favorable to

13 the defendants that's material either to guilt or punishment,

14 and known to the prosecution.  Of course possible consequences

15 for noncompliance could include dismissal of charges, dismissal

16 of the case, professional discipline  and sanctions.

17         I will enter an order more fully describing the

18 obligations and the consequences, but in the interim, I would

19 like the prosecution to confirm that it understands these

20 obligations and will fulfill them.

21         MR. BAGNUOLA:  We do and we will, Your Honor.

22         THE COURT:  All right, thank you.  I will enter an

23 order to that effect as well.  All right, I have before me the

24 indictment.  And I'm just going to advise now of the charges.

25         Mr. Creizman, you've now at least discussed the

1   indictment with your co-counsel and your client?

2        MR. CREIZMAN:  I have.

3        THE COURT:  All right, and have you reviewed it with

4   your client, Adam Kaplan?

5        MR. CREIZMAN:  Yes, I have.

6        THE COURT:  All right, and do you waive its public

7   reading?

8        MR. CREIZMAN:  I do.

9        THE COURT:  Okay.  Mr. Tremonte, how about you, have

10  you reviewed it with your client, Daniel Kaplan?

11       MR. TREMONTE: Yes, Your Honor.

12       THE COURT:  All right.  And do you waive its public

13  reading?

14       MR. TREMONTE:  We do.

15       THE COURT:  All right.  Now, I'm going to summarize

16  briefly what the indictment is for and what you've been charged

17  with.  And it charges you both with 16 counts, including

18  conspiracy to commit wire fraud, wire fraud itself, investment

19  advisor fraud and money laundering.  And it also includes a

20  criminal forfeiture allegation, all arising out of your

21  activities as financial investment advisors from May of 2018 to

22  November of 2022.  Do you both understand my summary?  I'm not

23  asking you to admit to it.  Just do you understand my summary

24  of the indictment?  Daniel?

25       DEFENDANT DANIEL KAPLAN:  Yes.

1           THE COURT:  Adam?

2           DEFENDANT ADAM KAPLAN:  Yes.

3           THE COURT:  All right.  Now that you've been advised

4    of the charges against you, how do you wish to plead at this

5    time?

6           DEFENDANT DANIEL KAPLAN:  Not guilty.

7           THE COURT:  All right. Adam?

8           DEFENDANT ADAM KAPLAN:  Not guilty.

9           THE COURT:  Okay.  Now, I understand as to bail,

10   detention or release, that there is an agreed upon package, is

11   that correct?

12          MR. TREMONTE:  Yes.

13          MR. BAGNUOLA:  Yes, Your Honor.  Earlier this

14   afternoon the Government filed a factual recitation under

15   docket entry number 6, that sets forth various bases that the

16   Government contends establish sufficient circumstances to

17   justify stringent conditions of release.  In this case I'm

18   pleased to say Mr. Tremonte and I have come to agreement on

19   broad terms of the conditions of release that would be

20   necessary to satisfy the Bail Reform Act.

21          In sum and substance, that include a $5 million bond,

22   two and a half million per defendant.  Fully secured by two

23   properties owned by the defendants' parents.  One in Great

24   Neck, one in New York City.  And that bond will be cosigned by

25   the defendants' parents, making each of them jointly and

1   severally liable for the 5 million in the event either of the

2   defendants should flee from the jurisdiction, or otherwise

3   violate any condition of their release.

4          The Government would also ask the Court to impose the

5   special conditions of release that Pretrial Services has

6   recommended that are set forth on page 3 of the Pretrial

7   Services report, for both Adam and Daniel Kaplan, they're

8   numbered 1 through 6 on both of those documents.

9          THE COURT:  All right, I see that.  Let me just ask

10  you a couple of questions.  So the $5 million bond, that would

11  be what, joint and several or we're doing two separate bonds

12  here? You can remain seated.

13         MR. BAGNUOLA:  Thank you, Your Honor.

14         THE COURT:  Thank you though, I appreciate it.

15         MR. BAGNUOLA:  I would propose two separate bonds

16  here.

17         THE COURT:  Yes, so would I.

18         MR. BAGNUOLA:  Each separately and independently --

19         THE COURT:  Yes.

20         MR. BAGNUOLA:  -- guaranteed by the properties.

21  We've taken the liberty, Officer Deprimo and I, to prepare two

22  bonds which I've provided to Mr. Tremonte for his review.

23         THE COURT:  Okay.

24         MR. BAGNUOLA:  I think each defendant should have his

25  own bond.

1          THE COURT:  In the amount of two and a half million

2    each.

3          MR. BAGNUOLA:  That's right, Your Honor.

4          THE COURT:  And both bonds will be secured by two

5    suretors, the parents?

6          MR. BAGNUOLA:  Yeah, as the beneficial owners of the

7    properties, I would propose that both parents sign both bonds.

8    Which adds, in addition to this collateral security, the moral

9    suasion that the Court typically looks to in order to guarantee

10   the defendants' appearance, and compliance with the terms of

11   release in cases like this.

12         THE COURT:  Okay. But who owns the properties, the

13   two properties, that is the New York City, just to be clear for

14   the record, is the 400 East 70th Street property.

15         MR. BAGNUOLA:  I'm going to defer to Mr. Tremonte if

16   the Court permits.

17         THE COURT:  Yes, of course.

18         MR. BAGNUOLA:  Because I think he can speak in

19   greater, with greater precision than I can, as to the ownership

20   of the properties.

21         THE COURT:  Okay, let me ask you, Mr. Tremonte then.

22   As to the property, the 400 East 70th Street property, first of

23   all, is it a condo or is it a co-op?

24         MR. TREMONTE:  That property is a condominium.

25         THE COURT:  It's a condominium, okay.  And what is

1  the value of that condominium?

2          MR. TREMONTE:  It's in excess of $3 million.

3          THE COURT:  3 million. And what is the equity in it

4  at this point?

5          MR. TREMONTE:  In excess of 3 million.

6          THE COURT:  No debt on it?

7          MR. TREMONTE:  There's no debt on that property.

8          THE COURT:  Okay.  And who are the fee owners of the

9  condominium?

10         MR. TREMONTE:  Stuart and Idida Kaplan.

11         THE COURT:  And --

12         MR. TREMONTE:  My client's parents.

13         THE COURT:  Those are your client's parents.

14         MR. TREMONTE:  Yes, Your Honor.

15         THE COURT:  Okay.  That's property one.  Property two

16 is Great Neck. And that, let me just see here, what's the

17 address of the Great Neck property?

18         MR. TREMONTE:  19 Gateway Drive, G A T E W A Y,

19 Drive, Great Neck, New York.

20         THE COURT:  All right, thank you.  And who are the

21 fee owners of that?

22         MR. TREMONTE:  That property is held by a trust, the

23 sole trustees of which are Stuart and Idida Kaplan.

24         THE COURT:  It's held by a trust.  Why did I think

25 the property -- where did I read that it was held by -- hold on

1    a second.  I thought I read somewhere in the Pretrial Services

2    report that it was, that property was held by either Daniel and

3    Adam, and/or a sister?  Did I misread that?

4                 MR. TREMONTE:  I don't think that's right.  The Great

5    Neck, the 19 Gateway Drive property is owned by a trust, and

6    the sole trustees are the parents.

7                 THE COURT:  They're the trustees, okay, so who are

8    the beneficiaries of the trust?

9                 MR. TREMONTE:  The trustees, the parents.

10                THE COURT:  Okay.  Ms. Deprimo, did I misread

11   something in the Pretrial Services report?

12                MS. DEPRIMO:  No, I don't think we any information

13   regarding that property.

14                THE COURT:  Okay, on the Great Neck property?

15                MS. DEPRIMO:  Correct.

16                THE COURT:  All right.  Sole trustees, beneficiaries.

17   Okay.  What's the value of the Great Neck property?

18                MR. TREMONTE:  It's in excess of 3 million, and it is

19   not encumbered.

20                THE COURT:  Not encumbered.  Okay.  Great, thank you.

21   Okay, and just so the record is clear, we still don't have any

22   financial information of the defendants at this point?

23                MR. TREMONTE:  That's correct, Your Honor.

24                THE COURT:  Okay.  So we're really I'm going on this

25   solely on the suretors.

1          MR. TREMONTE:  Correct, Your Honor. And to be clear,

2  the lack of financial information is on the advice of counsel

3  because there may be, there's likely to be overlap between that

4  information and the charged -- the allegations.

5          THE COURT:  So how do I make a determination on

6  flight without the defendants offering up their assets?

7          MR. TREMONTE:  So the -- I guess which side of it, so

8  the defendants will be maintained by their parents.  So in

9  terms of you know, having sufficient resources to live.

10          THE COURT:  If I -- hypothetically if these

11  defendants have much more than the value of these properties

12  and -- the whole purpose of the conditions and the bail

13  conditions, the bond amount, is to insure compliance in terms

14  of court appearances.  So how -- I understand it puts the

15  suretors at risk, and it's their parents, I don't know the

16  relationship, but how, what assurances do I have that these

17  numbers are a deterrent from skipping for the defendants?

18          MR. TREMONTE:  Well I don't believe there's an

19  allegation that either my client or Adam Kaplan possesses

20  resources in excess of what's available to their parents in the

21  value of these residences.

22          THE COURT:  Okay.  Yes, so I'm looking at page 2 of

23  the Pretrial Services report for Adam. And under finances, it

24  says, according to a Lexus Nexis inquiry, it appears that

25  defendant Adam, and his sister Michelle Kaplan, are the current

1  owners of their parents residence at 19 Gateway Drive in Great

2  Neck.  I thought I read that somewhere.

3          MR. TREMONTE:  Your Honor, may I have a moment to

4  confer?

5          THE COURT:  Of course you can.

6              (Recording silenced @ 4:54:15)

7               (Recording resumed @ 4:55:40)

8          MR. TREMONTE:  Thank you, Your Honor, for the

9  additional time.

10          THE COURT:  Yes, of course.

11          MR. TREMONTE:  So my understanding is is that that is

12  just -- it's just inaccurate. The property has a, sort of a

13  complex ownership history. And for a period of time, more than

14  ten years ago, ownership was with the children.  But in a

15  formally recorded transaction sale it was sold back to the --

16  who since that time have been and continue to be the sole

17  owners. And Your Honor, to address the Court's prior question,

18  not only is there no allegation of resources of that magnitude.

19  But the moral suasion of course is that if either of Adam or

20  Daniel abscond and fail to show up to court --

21          THE COURT:  Oh I get that part, yes.

22          MR. TREMONTE:  Okay.

23          THE COURT:  And hopefully they do too.  But I just

24  wanted to clarify that in terms of -- because I have no

25  financial information about Adam or Daniel.

1          Okay, so now, the trust instrument itself, are you

2  able to provide that at some point to Pretrial Services?

3          MR. TREMONTE:  Yes.

4          THE COURT:  Okay.

5          MR. TREMONTE:  We can do that within a week.  Yes,

6  Your Honor.

7          THE COURT:  Okay.  Because that would be part of it.

8  All right, suretors are here, I'd like to -- I'd like them to

9  perhaps -- it's probably easier if they come to the witness

10 stand.  I want to ask them a few questions.  You can either

11 stand or sit up there, whatever is easiest for you. Just use

12 the microphone.  Okay, I'm going to ask Doreen, my courtroom

13 deputy, to sworn both of you, all right, so I can ask you a few

14 questions.

15         THE CLERK:  If you could stand and raise your right

16 hand.  I'll swear you in each individually.

17              SURETOR, IDIDA KAPLAN, SWORN

18         THE COURT:  Thank you, you may be seated.  Hold on a

19 second.  Did we --

20         THE CLERK:  Mr. Creizman, did we lose you?  I think

21 we might have lost him.

22         THE COURT:  Sure did.  Okay, why don't you swear in

23 --

24         THE CLERK:  He may try and dial back in.

25         THE COURT:  Yes, and then we'll -- yes.

1            SURETOR, STUART KAPLAN, SWORN

2            THE COURT:  All right, thank you, you may be seated

3 as well.

4            THE CLERK:  Mr. Creizman, are you back?

5            MR. CREIZMAN:  I am back, I somehow dropped off, but

6 I'm back.

7            THE CLERK:  Okay.

8            THE COURT:  Okay, good the only thing you missed is

9 we just administered the oath to the proposed suretors.  That

10 is the parents, okay?

11            MR. CREIZMAN:  Okay, thank you.

12            THE COURT:  You're welcome.  Okay, I just, I want to

13 ask you a few questions.  Is it your intention to act as the

14 suretors for the bond here in the amount of $5 million total,

15 that is two and a half for each of your sons. First Missus?

16            MS. KAPLAN:  Yes.

17            THE COURT:  Okay.  And Mister?

18            MR. KAPLAN:  Yes.

19            THE COURT:  Okay.  Do me a favor, pull the mic close.

20 Put it right between you.  Make sure that little light is on

21 and just speak into the mis so we can all hear you.  And this

22 is a very important responsibility.  So I want to make sure you

23 understand what it means, okay, before you agree to do it.

24 Because I'm going to ask you some questions and that's why I

25 asked Doreen to put you under oath.

1              So could you just state your full names for the

2      record.

3              MS. KAPLAN:  Idida A. Kaplan.

4              THE COURT:  Okay.

5              MR. KAPLAN:  Stuart Kaplan.

6              THE COURT:  Okay.

7              SURETOR, STUART KAPLAN, PREVIOUSLY SWORN

8      EXAMINATION BY THE COURT:

9      Q    And Mr. Kaplan, are you currently working?

10     A    Yes.

11     Q    What is your occupation?

12     A    I'm a physician and allergist.

13     Q    At where?

14     A    Massapequa, New York.

15     Q    Okay, are you affiliated with a group or a practice?

16     A    Private practice.

17     Q    Okay. And for how long have you been doing that?

18     A    41 years.

19     Q    Okay, and what is your annual income?

20     A    Net, gross?

21     Q    Either way, just clarify which you're telling me.

22     A    About $500,000.

23     Q    Net or gross?

24     A    Net.

25     Q    Okay.

1                 SURETOR, IDIDA KAPLAN, PREVIOUSLY SWORN

2    EXAMINATION BY THE COURT:

3    Q    How about Missus.  Could you tell me what your occupation

4    is?

5    A    I'm a physician, ophthalmologist in private practice.

6    Q    Okay, are you affiliated with a group or a practice?

7    A    Solo practice.

8    Q    And where do you practice?

9    A    My practice is located in Great Neck, on Northern

10   Boulevard.

11   Q    All right, and for how long have you been in practice?

12   A    Over three decades.

13   Q    All right.  And what is your annual income?

14   A    Roughly the same, over 500.

15   Q    And that would be net?

16   A    Net.

17   Q    Okay.  Now, could you describe your home, we heard earlier

18   in Great Neck, that is owned by you through a trust?

19   A    Yes.  That's correct, Your Honor.

20            THE COURT:  All right, pause for a second.  Let's

21   just make sure he's --

22            THE CLERK:  Mr. Creizman, did we lose you? I think we

23   lost him again.

24            THE COURT:  All right, just bear with us a second

25   until he gets back on, all right?

1                    (Court and Clerk confer)

2              THE CLERK:  Mr. Creizman, are you back?

3              MR. CREIZMAN:  Yes, I'm back, I'm so sorry.  I don't

4    know what happened but I'm back.

5              THE COURT:  Don't worry about it.  As soon as you got

6    off we knew you got off and we didn't do anything further.  So

7    you didn't miss anything this time, all right?

8              MR. CREIZMAN:  Okay, thank you.

9              THE COURT:  Okay, so both parents are now on the

10   stand and I'm just asking them a few questions about assets.

11   And they were just about to tell me about the home in Great

12   Neck.  Is that held -- are you both trustees of the trust that

13   holds the title to the home in Great Neck?

14             MR. KAPLAN:  Yes.

15             MS. KAPLAN:  Yes.

16             THE COURT:  All right.  And that is 19 Gateway Drive,

17   Great Neck?

18             MR. KAPLAN:  Yes.

19             MS. KAPLAN:  That's correct.

20             THE COURT:  And for how long has the trust owned that

21   home?

22             MR. KAPLAN:  Well that's a -- I took approximately,

23   let's see -- over ten years.

24             THE COURT:  Okay, and are you both the beneficiaries

25   of that trust?

1          MR. KAPLAN:  Yes.

2          THE COURT:  Sole beneficiaries?

3          MR. KAPLAN:  Sole beneficiaries.  It's a revocable

4    living trust.

5          THE COURT:  Does any other person or entity have an

6    interest in that property other than the trust?

7          MR. KAPLAN:  No, just myself and my wife.

8          THE COURT:  Okay. And counsel represented that the

9    value of the property was roughly $3 million, is that correct?

10         MS. KAPLAN:  It's probably more than 3 million.

11         THE COURT:  All right.  And is there any debt on that

12   property?

13         MS. KAPLAN:  No.

14         MR. KAPLAN:  No.

15         THE COURT:  Any mortgages or encumbrances or liens?

16         MR. KAPLAN:  There's no liens.

17         MS. KAPLAN:  No.

18         THE COURT:  Nothing?

19         MR. KAPLAN:  No.

20         THE COURT:  Okay, and how about the New York City

21   property, the East 70th Street, 400 East 70th Street property,

22   is that held by you?

23         MS. KAPLAN:  Yes.

24         MR. KAPLAN:  It's held by both of us.

25         MS. KAPLAN:  Both of us.

1          THE COURT:  Both of you. Okay, and it's a condominium

2    not a co-op.

3          MR. KAPLAN:  Condominium.

4          MS. KAPLAN:  Condominium

5          THE COURT:  And the value of that?

6          MS. KAPLAN:  Over 3 million.

7          THE COURT:  Okay. Again, is there any debt, mortgage,

8    lien or encumbrance on that property?

9          MS. KAPLAN:  No encumbrances.

10          MR. KAPLAN:  No.

11          THE COURT:  And for how long have you owned that

12    property?

13          MS. KAPLAN:  Over two decades.  20 years, since --

14          MR. KAPLAN:  Yeah, about 20 years.

15          MS. KAPLAN:  A little over 20 years.

16          THE COURT:  Okay. And I'm asking, I'm sorry for

17    prying, but I'm asking you these questions because the bond is

18    going to be in the amount of $5 million.  It's a significant

19    bond.

20          MS. KAPLAN:  I understand.

21          THE COURT:  That means if your sons do everything

22    they're supposed to do, and comply with the conditions which

23    Mr. Bagnuola outlined for the Court, then there's nothing going

24    to happen to the property you're pledging.  Okay, do you

25    understand that?

1           MS. KAPLAN:  Yes.

2           THE COURT:  By the way, did you hear the conditions

3   that Mr. Bagnuola outlined?

4           MS. KAPLAN:  Yes.

5           THE COURT:  Okay, did you understand the conditions?

6           MS. KAPLAN:  Yes, we did.

7           MR. KAPLAN:  Yes.

8           THE COURT:  Do you have any questions for me about

9   the conditions?

10          MS. KAPLAN:  No questions.

11          MR. KAPLAN:  No.

12          THE COURT:  Okay.  They've got to return to court

13  when they're required to.  They have to cooperate with Pretrial

14  Services as directed.  Their travel is going to be restricted

15  to the Eastern and Southern Districts of New York.  What does

16  that mean?  Nassau, Suffolk and the five Boroughs, and

17  Westchester too, I guess, right. They're going to have to

18  surrender their passports.  Okay?  They may be subject to

19  random home visits.  And no contact whatsoever with victims or

20  potential witnesses in the case.  And they're to refrain from

21  any employment at this juncture associated with investment

22  advising.  Do you understand that?

23          MS. KAPLAN:  Yes, I do, Your Honor.

24          THE COURT:  Okay.  So what that means is if they

25  violate -- either one of them violate these conditions, that

1  puts you at risk.  Puts you at great risk.  It means the

2  Government can come in and they can -- you will owe them two

3  and a half million dollars for each of your sons.  So, and it's

4  not just limited to the homes. When you're pledging and acting

5  as a suretor for the 5 million total, they can go after any

6  other assets, bank accounts, bonds, property, up to that

7  amount. They can garnish wages if they have to.  So by signing

8  this bond that you're both -- you're going sign bonds for both

9  of them, you're telling the Court that you're willing to take

10 this risk that they're going to comply and show up and comply

11 with the conditions. Otherwise you will owe the Government $5

12 million.  Do you understand that?

13          MS. KAPLAN:  We do, we understand.

14          MR. KAPLAN:  Yes.

15          THE COURT:  Okay.  And as I say, taking this on is a

16 serious responsibility.  And has serious consequences for you.

17 So, do you agree to act as a suretor, Mrs. Kaplan?

18          MS. KAPLAN:  Yes, I do, Your Honor.

19          THE COURT:  All right, Mr. Kaplan?

20          MR. KAPLAN:  Yes.

21          THE COURT:  Okay. Do you have any questions of me

22 about what it means to be a suretor or the conditions?

23          MS. KAPLAN:  No, I think you explained it well, thank

24 you.

25          MR. KAPLAN:  No questions.

1    THE COURT:  Okay.  All right.  So you can go back --

2  you can sit at counsel table if that's okay, or the audience,

3  whichever you prefer. Thank you very much I appreciate that.

4  And take the water with you.

5    All right, so Daniel and Adam, I just want to make

6  sure that you understand the conditions of your release, Adam?

7    DEFENDANT ADAM KAPLAN:  Yes, I understand them.

8    THE COURT:  Okay, you heard Mr. Bagnuola recite what

9  the conditions of the release are?  You have to report as

10  directed.

11    DEFENDANT ADAM KAPLAN:  Yes.

12    THE COURT:  This is to both of you.  All right, I'm

13  going to ask both of you, make sure -- and Daniel understand

14  that as well?

15    DEFENDANT DANIEL KAPLAN:  Yes.

16    THE COURT:  Okay.  And you understand that the two

17  people that were just on under oath on the witness stand here

18  are people who love and care for you, your parents. And they've

19  now put their financial well being in your hands, okay, because

20  they're putting faith in you that you're going to comply, that

21  you will comply with these conditions and show up to court when

22  you're supposed to, and cooperate with Pretrial Services, and

23  all of the other conditions.  If you violate any of these

24  conditions, any of them, you could have the bond revoked

25  immediately and you could be held in jail pending your trial.

1  And in addition, your parents will be on the hook for the $5

2  million.  And in addition there could be additional charges for

3  you, additional from the ones that are in this indictment, for

4  bail jumping.  Okay.  Do you understand that?  Daniel?

5          DEFENDANT DANIEL KAPLAN:  Yes.

6          THE COURT:  Adam?

7          DEFENDANT ADAM KAPLAN:  Yes.

8          THE COURT:  Okay, do you have any questions of me?

9          DEFENDANT DANIEL KAPLAN:  No.

10         DEFENDANT ADAM KAPLAN:  No.

11         THE COURT:  Okay, so it's critically important you

12  comply with this.  And if you comply there will no consequences

13  for your parents, all right.  Okay, you're also not to commit

14  any, needless to say, new crimes while on bond.  If you're

15  found to have done that, it's also grounds for revoking, apart

16  from the conditions that are in the bond.

17         And it's, one of the conditions is that you're not to

18  have any association of contact with any victims or witnesses

19  to the case.  So needless to say, don't threaten to attempt to

20  influence anyone's testimony that you might think could be a

21  witness.  Again that could lead to revocation of the bond and

22  detention.

23         Do you understand that, Daniel?

24         DEFENDANT DANIEL KAPLAN:  Yes.

25         THE COURT:  Adam?

1          DEFENDANT ADAM KAPLAN:  Yes.

2          THE COURT:  Okay.

3          MR. TREMONTE:  Your Honor, may I be heard on that

4    point?

5          THE COURT:  Of course, Mr. Tremonte.

6          MR. TREMONTE:  So, on that condition, which is

7    condition 7(e), the indictment of course does not identify --

8          THE COURT:  Witnesses.

9          MR. TREMONTE:  -- alleged victims or witnesses by

10   names. And my understanding is that we have an agreement as

11   between the parties that the Government will in short order

12   supply us with a list of names so that we have some guidance as

13   to compliance with this provision.

14          And just to complete the record, Your Honor.

15          THE COURT:  Yes.

16          MR. TREMONTE:  I will be brief.

17          THE COURT:  Okay.

18          MR. TREMONTE:  But just a few things.  Number one,

19   although we agree upon the bail package, we of course

20   vigorously contest all of the allegations in the Government's

21   bail letter.

22          THE COURT:  Well let me just pause you there for a

23   second.  Because this is for your clients' benefit.  Just

24   because we have discussion about a bail package, whether you're

25   detained, that has no impact on your presumption of innocence.

1  Do you understand that? You are presumed to innocent in this

2  Court.

3          UNIDENTIFIED DEFENDANT:  Yes.

4          THE COURT:  You're presumed innocent, this is by

5  statute, I have to do what I'm doing here today, determine

6  whether you're detained or there's bail, and if so how much

7  would assure your appearance.  That's it. It has -- you should

8  take nothing from it that affects your presumption of

9  innocence.  Okay? Sorry, Mr. Tremonte.

10         MR. TREMONTE:  Thank you, Your Honor. And then

11 separately, just so the record is clear.  This indictment has

12 been on the horizon for some time.  This investigation has been

13 known to us for the better part of two years.  We volunteered

14 to have both Adam and Daniel self-surrender, and they did in

15 fact self-surrender today.

16         THE COURT:  I know that.  Thank you, I appreciate you

17 pointing that out.

18         MR. TREMONTE:  Thank you, Your Honor.

19         THE COURT:  I appreciate that.  Okay, so I understand

20 the next date before Judge Brown is August 31, 11 a.m.  And

21 it's in person, right, Doreen, as far as we know.

22         THE CLERK:  Yes, in person.

23         THE COURT:  Okay, in person.  Is there untying else

24 that we need to do at this point, Mr. Bagnuola?

25         MR. BAGNUOLA:  Yes, Your Honor, just a few

1  housekeeping issues.  I'm advised that whatever electronic

2  system the US Marshals use for processing folks, is either down

3  or not functioning today, such that the processing of Mr. Adam

4  and Mr. Daniel Kaplan was unsuccessful.  We would ask, I

5  believe on consent, that as a condition of their release they

6  be directed to report back for the completion of their

7  processing tomorrow.

8         THE COURT:  Yes, I mean that I think is subsumed in

9  the condition that they report to Pretrial Services as

10 directed.  But it's good to have it expressed and agreed upon.

11        MR. TREMONTE:  It is on consent, Your Honor.  Yes.

12        THE COURT:  All right, thank you.

13        MR. BAGNUOLA:  As Mr. Tremonte has indicated, the

14 Government will provide a list of victims.  I'll also note

15 however, just the Pretrial Services reports do not contain any

16 indication that either defendant is currently -- or any

17 acknowledgment that either defendant is currently involved in

18 investment advisory services.  And so I don't expect that there

19 will be contact with any clients of their investment advisory

20 business. But in an abundance of caution, we will provide the

21 names of folks that we ask Mr. Kaplan and Mr. Kaplan not to

22 associate with pending trial.

23        THE COURT:  Yes, I think you should because part of

24 the -- at least in looking at your letter from, on document

25 entry 6 on the docket that you filed today, indicates that some

1  of the victims were friends.  So that's a little bit unclear as

2  to who they can contact, who they can't. So I think the sooner

3  the better.

4           MR. BAGNUOLA:  Understood, Your Honor.

5           MR. TREMONTE:  Thank you, Your Honor.

6           THE COURT:  All right.

7           MR. BAGNUOLA:  Pretrial has recommended, or has

8  requested, and Your Honor has ordered, that the Kaplans

9  surrender their passports. We would ask that that be done

10 immediately.

11          THE COURT:  Yes, that should be done forthwith. Any

12 reason -- is there any obstacle to that, Mr. Tremonte?

13          MR. TREMONTE:  There's not an obstacle, Your Honor,

14 can we do that at the same time that --

15          THE COURT:  Do the processing?

16          MR. TREMONTE:  Yes.  So tomorrow.

17          THE COURT:  Makes sense, yes.  Agreeable?

18          MR. TREMONTE:  Agreeable, Your Honor, yes, thank you.

19          THE COURT:  Okay.

20          MR. BAGNUOLA:  And lastly, Your Honor --

21          THE COURT:  Hold on a second.  I just heard something

22 from the phone.  Mr. Creizman, do you agree with that?

23          MR. CREIZMAN:  I do, Your Honor.

24          THE COURT:  Okay, very well, thanks.

25          MR. BAGNUOLA:  Lastly Judge, between today and August

1  31st, the Government will be providing voluminous discovery to

2  counsel.  And I anticipate engaging in good faith negotiations

3  with an eye toward resolving some or all of this case without

4  the need for a trial.  Understand those circumstances I would

5  respectfully submit that Mr. Kaplan and Mr. Kaplan's interest

6  in a speedy trial is outweighed by the -- or the public's

7  benefit in a speedy trial rather is outweighed in the interest

8  between counsel and clients in trying to resolve this case. So

9  I would move for an exclusion from the computation of speedy

10  trial time, the period from today until August 31st.

11          MR. TREMONTE:  That's on consent, Your Honor.

12          THE COURT:  That's on consent, Mr. Tremonte.

13          MR. TREMONTE:  Yes, Your Honor.

14          THE COURT:  Mr. Creizman, you as well?

15          MR. CREIZMAN:  Yes, Your Honor, on consent.

16          THE COURT:  Okay.  And -- well let me, Mr. Tremonte,

17  have you had the opportunity to speak with your client and/or

18  Mr. Creizman's client while you were in there about waiving

19  speedy trial?

20          MR. TREMONTE:  We did, Your Honor.

21          THE COURT:  And what that means.

22          MR. TREMONTE:  Yes, Your Honor.

23          THE COURT:  And do you believe that they both

24  understand what that means?

25          MR. TREMONTE:  I believe they understand it and they

1  understand that it's in their interest to so waive.

2          THE COURT:  All right. And your understanding is that

3  they are voluntarily agreeing to waive the time from today

4  until August 31st?

5          MR. TREMONTE:  That's my understanding, Your Honor.

6          THE COURT:  Okay.  I just want to make sure myself,

7  Adam and Daniel, do you understand that under the law, the

8  Government has a period of 70 days from indictment in which to

9  bring this matter to trial or otherwise dispose of the matter,

10 okay 70 days.  And today both sides are essentially making an

11 application to exclude time in that 70 day clock, so it won't

12 be counted towards the 70 days, from today until August 31st.

13 Meaning the clock doesn't even start ticking until August 31st.

14 Do you understand that?

15         DEFENDANT ADAM KAPLAN:  Yes.

16         DEFENDANT DANIEL KAPLAN:  Yes.

17         THE COURT:  Okay.  And have you had the opportunity

18 to speak with your lawyers about that?

19         DEFENDANT ADAM KAPLAN: Yes.

20         DEFENDANT DANIEL KAPLAN:  Yes.

21         THE COURT:  Okay, and are you now agreeing to exclude

22 that time?

23         UNIDENTIFIED DEFENDANT:  Yes.

24         THE COURT:  And do we have a signed writing to that

25 effect?  Okay.  Did you sign the stipulation to that effect?

1          MR. TREMONTE:  We'll do that now, Your Honor.

2          THE COURT:  All right.  So I'll ask you to do that.

3     But I'm going to ask both of you, has anyone threatened or

4     coerced you in any way to agree to this, to give up this time

5     from now until August 31st?

6          DEFENDANT ADAM KAPLAN:  No.

7          DEFENDANT DANIEL KAPLAN:  No.

8          THE COURT:  Okay.  And any other promises made to you

9     to induce you to agree to give up this time?

10         DEFENDANT ADAM KAPLAN:  No.

11         DEFENDANT DANIEL KAPLAN:  No.

12         THE COURT:  Okay.  All right, I do find that the

13    continuance of time serves the interest of justice.  And that

14    this outweighs the interest of either of the defendants or the

15    public, in denying the application.  So I'll approve that as

16    well.

17         Anything else, Mr. Bagnuola?

18         MR. BAGNUOLA:  Not from the Government, Your Honor,

19    thank you.

20         THE COURT:  All right. Mr. Tremonte?

21         MR. TREMONTE:  Nothing for us, Your Honor.

22         THE COURT:  All right, Mr. Creizman?

23         MR. CREIZMAN:  No, nothing from Mr. Kaplan, but thank

24    you.

25         THE COURT:  All right, and thank you for

38

1  participating by telephone.  All right, we're adjourned then,

2  thank you all, have a good afternoon.

3          MR. CREIZMAN:  Thank you.

4          MR. TREMONTE:  Thank you,  Your Honor.

5          MR. BAGNUOLA:  Thank you, Your Honor.

6          THE COURT:  Thank you.

7                      *  *  *  *  *

8          **C E R T I F I C A T I O N**

9          I, **PATRICIA POOLE**, court approved transcriber,

10  certify that the foregoing is a correct transcript from the

11  official electronic sound recording of the proceedings in the

12  above-entitled matter.

13

14  /S/ PATRICIA POOLE

15  TRACY GRIBBEN TRANSCRIPTION, LLC        DATE: September 24, 2024

16

17

18

19

20

21

22

23

24

25