# EXHIBIT L

ORIGINAL

1  SUPREME COURT OF THE STATE OF NEW YORK

2  COUNTY OF NASSAU:    TRIAL TERM PART 4
   --------------------------------------------X
3  ADAM S. KAPLAN AND DANIEL E. KAPLAN

4                           Plaintiffs,

5            - against -                    ORAL ARGUMENT

6  CADWALADER WICKERSHAM & TAFT, LLP, TODD
   BLANCHE AND JARED STANISCI
7

8                           Defendants.

   --------------------------------------------X
9  INDEX NO. 609236-23

                                 100 Supreme Court Drive
10                               Mineola, New York 11501
                                 February 25, 2025
11 B E F O R E:

12             HONORABLE TIMOTHY S. DRISCOLL
                    Supreme Court Justice
13
   A P P E A R A N C E S:
14
               FOR THE PLAINTIFFS:
15             JASPAN SCHLESINGER NARENDRAN LLP
               300 Garden City Plaza, 5th Floor
16             Garden City, New York 11530
               BY:  STEVEN SCHLESINGER, ESQ.
17                  GAYLE GERSON, ESQ.

18             FOR THE DEFENDANTS:
               CLEARY GOTTLIEB STEEN & HAMILTON LLP
19             One Liberty Plaza
               New York, New York 10006
20             BY:  VICTOR L. HOU, ESQ.
                    MIRANDA HERZOG, ESQ.
21
               FOR THE DEFENDANTS:
22             L'ABBATE, BALKAN, COLABITA & CONTINI, L.L.P.
               3 Huntington Quadrangle, Suite 102-s
23             Melville, New York 11747
               BY:  MARIAN C. RICE, ESQ.
24
                                 JENNIFER DEVLIN
25                               SENIOR COURT REPORTER

```
 1                    THE CLERK:  All rise.  The Nassau County
 2   Supreme Court Trial Term Part 4 is now in session.  The
 3   Honorable Timothy S. Driscoll presiding.
 4                    THE COURT:  Good morning, everyone.  Good
 5   morning.
 6                    THE CLERK:  Please be seated.
 7                    In the matter of Adam S. Kaplan and Daniel E.
 8   Kaplan against Cadwalader Wickersham & Taft, LLP, Todd
 9   Blanche and Jared Stanisci.  Index No. 609236 of 2023.
10                    Counsel for the plaintiff, please make your
11   appearance.
12                    MR. SCHLESINGER:  For the plaintiffs, Jaspan
13   Schlessinger Narendran by Steven Schlesinger and Gayle
14   Gerson.
15                    THE COURT:  Good morning.
16                    And to your left?  To your left?
17                    MR. SCHLESINGER:  My client Mr. Kaplan, Dan
18   Kaplan.
19                    THE COURT:  Mr. Kaplan.  Good morning, Mr.
20   Kaplan and Ms. Gerson.
21                    MR. HOU:  Good morning, Your Honor.
22                    Victor Hou.  Cleary Gottlieb Steen & Hamilton
23   on behalf of the defendants.
24                    THE COURT:  Good morning to you.
25                    MR. HOU:  To my left is my colleague Miranda
```

3

```
 1        Herzog.  And to her left is Marian Rice.  And in the well
 2        we have Gillian Burns, the associate general counsel of
 3        my client, Caladawader.  And sitting next to her is
 4        Nicholas Gravante, Jr., who is the head of Cadwalader's
 5        litigation group.
 6                    THE COURT:  Good morning.  Good morning to all.
 7                    There's another Mr. Kaplan in the back, Miss
 8        Gerson?
 9                    MS. GERSON:  Yes.  That's Stuart Kaplan.
10                    THE COURT:  Stuart Kaplan, who is --
11                    MR. SCHLESINGER:  He's not involved.
12                    THE COURT:  Okay.  He's most welcome to be
13        here.  We're in open court.
14                    All right.  So we're back after -- well, we're
15        back on track to move this case.  I have a motion to
16        reargue, which is before me.  I've read it.
17                    Ms. Gerson, I'm happy to hear you.
18                    MS. GERSON:  Mr. Schlesinger is --
19                    THE COURT:  Happy to hear you.
20                    MR. SCHLESINGER:  Your Honor, the simplest
21        issue in this case is once we raised the issue of their
22        right to a retaining lien, they have the burden of proof
23        that they're entitled.  They can never reach that burden
24        of proof because they supposedly withdrew with no notice
25        days before the bills came due.
```

```
 1              THE COURT:  But isn't that -- if this were the
 2     first bite at the apple -- well, it's not.  I heard that
 3     very argument.  I think this courtroom was under
 4     renovation then.  I think I heard it in another courtroom
 5     then.  But I heard the exact same argument.  And I said
 6     -- I rejected the argument.
 7              And I also expressed the sentiment that I'm not
 8     a magistrate.  It's a wonderful job.  I'm not a
 9     magistrate for the Federal Court.  You want this.  You
10     want what you want because of the criminal trial.  Go to
11     the judge presiding over the criminal trial.  That's what
12     I said the last time.  There's nothing new in the papers.
13     There's nothing new.  It's Driscoll, you made a mistake.
14     Well, that's what Brooklyn's for.
15              MR. SCHLESINGER:  The mistake the Court made is
16     we're entitled to an immediate hearing on the issue of
17     whether or not they're entitled to a retaining lien.
18              THE COURT:  So if I'm wrong, isn't that what
19     Brooklyn's for?  And if it's so immediate why hasn't
20     Brooklyn asked or directed me to do that in the last, I
21     don't know, 8 or 9 months since I made the initial
22     decision?
23              MR. SCHLESINGER:  We did.  We made the motion.
24     And we were looking to avoid the retaining -- the claim
25     to a retaining lien.  And the --
```

jd

1         THE COURT:  No.  I'm sorry.  The request was --
2    the application was, Driscoll, you got it wrong, or
3    you're telling me I got it wrong.  Brooklyn's -- there's
4    been months passed since I supposedly got it wrong.  And
5    Brooklyn hasn't directed me to do anything different.
6         MR. SCHLESINGER:  Between then and now we made
7    the motion.  We had to make it within 30 days.  We made
8    the motion timely.
9         THE COURT:  No.  I know to me that's true.  But
10   to Brooklyn -- Brooklyn hasn't -- just because you want
11   me to see the error of my ways and find differently, that
12   doesn't foreclose you from going to Brooklyn.  You come
13   here because you can get something faster supposedly than
14   Brooklyn.
15        MR. SCHLESINGER:  Brooklyn's 2 years.  We all
16   know that.
17        THE COURT:  Okay.  That's not -- that's not a
18   reason in and of itself for a motion for renew and
19   reargue.  I know Mr. Hou is probably going to tell me
20   something like that.
21        MR. SCHLESINGER:  Well, it is when the Court
22   overlooked the fact that they have the burden of coming
23   forward and proving their entitlement to it.  And what
24   the Court did was postpone that hearing until the trial
25   of this case, which is unduly prejudicial to our client.

1          If they're not entitled to a retaining lien and

2    the file is essential to our clients' criminal defense,

3    the Court's postponement of the hearing on that to a

4    trial that could happen a year from now is so prejudicial

5    that it almost -- I hate to say, it shocks the

6    conscience.

7          THE COURT:  What shocks the conscience is

8    because of the timing of what's going on in Brooklyn, not

9    because of what's going on here.

10          MR. SCHLESINGER:  Their assertion of a

11    retaining lien to which they're not entitled and the

12    Court postponing the hearing on that issue for what could

13    be a year is so unduly prejudicial to our client that, as

14    I said, it shocks the conscience.

15          THE COURT:  Okay.  Okay.  I got it.

16          Mr. Hou.

17          MR. HOU:  Thank you, Your Honor.

18          Your Honor has it exactly right.  This is not

19    the Kaplans first bite at the apple.  Maybe it was the

20    season.  Maybe it was just because Groundhog's Day just

21    happened.  But I did find myself watching Groundhog's Day

22    the movie for probably the fifth time, just like we are

23    here.

24          THE COURT:  You didn't cite it in your papers,

25    but that's okay.

1        MR. HOU:  It's, like, universally understood.

2        We have argued these exact arguments and

3    replayed them in different courts:  in the Eastern

4    District of New York when they chose to file this action

5    for relief.  And we've argued before Your Honor in this

6    courtroom months before.  There is nothing new under the

7    sun.  They have made these arguments.  And they have been

8    rejected by Court after Court after Court.

9        And just to be clear, the idea that this is

10    unduly prejudicial to the Kaplans to hold them to their

11    choice is absurd.  They decided to follow this course, as

12    Judge Wicks in Eastern District said.  They charted their

13    own course, right?  They decided to file a malpractice

14    claim against their clients after they were charged by

15    the SCC.

16        They could have paid the retaining lien and

17    said, you know what, we'll deal with you later.  They

18    decided to pursue this case regardless even after they

19    were indicted.  They made that choice, right?  They could

20    have paid the lien, gotten the file, and there would be

21    no prejudice, right?  That's certainly an option they

22    could have done.  They did not do that.

23        When master Judge Lindsay (phonetic), the first

24    judge that considered it in the SCC case that they filed,

25    said, hey, this is Federal Court, you haven't given us a

1    subpoena, Cadwalader a subpoena, you should go to state

2    court, did they take up this invitation?  They did not.

3    Instead they went to the criminal court, the criminal

4    side of the Eastern District.

5         So they had the opportunity to decide whether

6    or not to bring this case in the first place or wait

7    until after their SCC case and later in the criminal

8    case.

9         THE COURT:  That's your heartstring argument.

10   That's your -- you're taking back the heartstrings that

11   they tugged at.  I don't know if that metaphor is good,

12   but it's as good as I got.  But even before we get there

13   your point is, Judge, if all of this is before you, let

14   them go to Brooklyn.

15        MR. HOU:  100 percent, Your Honor.

16        THE COURT:  I don't have to reach -- I don't

17   have to reach the issue you're arguing right now.  The

18   real question is, everything that's here was here.

19        MR. HOU:  You're absolutely right.  And it's

20   barred by res judicata, as Your Honor said.  Your Honor

21   also said on --

22        THE COURT:  Again whatever it's barred by, I

23   said everything already.  There's nothing new.

24        MR. HOU:  Exactly.  The orders below were

25   appended to their filing papers.  Your Honor didn't

```
 1   misapprehend or not read them.  That was part of the
 2   record.  We both talked about it.  The words aren't going
 3   to change.
 4              THE COURT:  There is an appeal from the earlier
 5   decision that's the subject of this motion to renew and
 6   reargue, isn't there?  A notice to appeal was filed, I
 7   believe -- oh gosh -- November?  Ms. Gerson, I think you
 8   filed it, so maybe you know.  I don't mean to pop quiz
 9   you first thing in the morning.
10              MR. SCHLESINGER:  We did file it.
11              THE COURT:  You did file it, okay.  And was
12   there any motion for immediate relief from that order
13   asked for in Brooklyn?
14              MR. SCHLESINGER:  Oh, no.  I withdrew -- we
15   filed the motion.  We filed the notice of appeal from the
16   original --
17              THE COURT:  Right.
18              MR. SCHLESINGER:  -- discovery, not from this
19   motion.
20              THE COURT:  Not from this motion that's the
21   subject.  Okay.  Okay.
22              MR. HOU:  My point is this, Your Honor.  In
23   this case they could have decided, right?  Kaplan chose
24   to attack their lawyers and then, you know, make all of
25   these frivolous, you know, allegations.  They could have
```

1    stood on them and said, Your Honor, we need an expert at

2    trial.

3              THE COURT:  I don't have to get there.  I don't

4    have to get there.  This is -- you're repeating what you

5    said months ago.  You had a little more vitriol in your

6    voice a couple of months ago.  And thank you for taking

7    that down this time and starting with simply a 90s movie

8    reference.

9              But your point is you already did this, Judge?

10             MR. HOU:  You're absolutely right.

11             THE COURT:  Isn't that really the beginning and

12   end of the story?

13             MR. HOU:  It is, Your Honor.  But I just want

14   you to feel good about your decision, because it was the

15   right decision on the merits.  Since the last time we

16   spoke before Your Honor on January 22nd --

17             THE COURT:  There's nothing in the oath I took

18   about feeling good about what I do.  All right.  It's

19   following the law and being part of this great justice

20   system.  But I got it.

21             MR. HOU:  Exactly.

22             The Second Department did vacate the temporary

23   stay of discovery that had been requested by the Kaplans.

24   So Your Honor is absolutely right.  We are now going to

25   proceed to discovery.  And that's important.  We served

1    prior deposition notices on the Kaplans' parents,

2    including Mr. Richard Kaplan who's sitting in the

3    audience there.

4              THE COURT:  It's Mr. Stuart Kaplan?

5              MR. HOU:  Correct.

6              THE COURT:  All right.

7              MR. HOU:  We received no response.  We noticed

8    depositions for the Kaplans, the defendants in the

9    criminal case, the plaintiff's case.  But meanwhile in

10   discovery we continue to get stonewalled, as you might

11   expect.  For example, we note that in response to our 28

12   categories of document requests, they asserted their

13   Fifth Amendment rights to each one of them.  They refused

14   to respond to eight interrogatories based on their Fifth

15   Amendment rights.  So all of that is to say very soon you

16   may be hearing from Miss Rice on the different

17   deficiencies so far as discovery proceeds.

18             THE COURT:  What's the status of the criminal

19   case?  Because there may well be a -- I'm getting way

20   ahead of myself.  But there may well be an appropriate

21   Fifth Amendment objection here.  So is there a -- is that

22   criminal case going to be resolved quickly?

23             MR. HOU:  My understanding is that there was a

24   superseding indictment --

25             THE COURT:  Okay.

1    MR. HOU:  -- filed by the Eastern District in

2    February.  So this -- earlier this month.  Right now the

3    trial date is scheduled for May 5th.

4         THE COURT:  Of this year?

5         MR. HOU:  Correct.  But it very well could get

6    pushed.  And my point --

7         THE COURT:  That was the same day we were

8    supposed to start this trial originally also.

9         MR. HOU:  Correct.  Correct.  So you can

10   imagine, Your Honor, just going back to my point --

11        THE COURT:  May 5th, but it may be pushed?

12        MR. HOU:  Correct.

13        THE COURT:  And that's in front of Judge

14   Azrack?

15        MR. HOU:  That's correct, Your Honor.

16        THE COURT:  A-Z-R-A-C-K.

17        MR. HOU:  Yes, Your Honor.

18        THE COURT:  Okay.  So my point is this.  If

19   they had decided, right, as a matter of tactics instead

20   again with Your Honor and said we would like an expedited

21   hearing, trial on the ultimate issue, we would be done,

22   possibly done with the issue.  We would certainly be far

23   along in discovery.

24        And they could have, if they deserved the file,

25   right, at the end of the conclusion, the ultimate relief

1    they're seeking, just to be super clear, this complaint,

2    amended complaint, original complaint sought in each

3    prayer for relief on each of the three counts.  What did

4    they seek?  They sought the return of what they call the

5    "client file" or the "client legal file."  That's what

6    this case has always been about.

7           And instead of coming to Your Honor at the very

8    beginning, they filed this case, you know, a year and 8

9    months ago, a year and 8 months ago.  624 days, right?

10   They didn't do that.  They didn't do that.  They didn't

11   come to Your Honor and say, we need this immediately.

12   Because then I can have this discovery and then I can use

13   it for my criminal trial, right?  They don't want to do

14   it.  They claimed and professed their factual innocence

15   in their complaint.  They said, it's not our fault.  It's

16   Cadwalader's fault why we got charged.  Literally that's

17   what they said in their indictment -- in their compliant.

18          So to us the idea that they would bring this

19   case, make these allegations to try to force Cadwalader

20   to turn over this file for nothing and then when we say,

21   okay, we'll answer those allegations, we'll see you in

22   court, they say no, no, no.  Not so fast.  We want to

23   steer our own action.

24          THE COURT:  That's a question I was thinking

25   about is -- I think about this every time I see all of

jd

1    you.  Usually the "P" in plaintiff is for prompt and the

2    "D" in defendant is for delay.  That's not -- well, it's

3    something they teach us I guess first year civil

4    procedure.  I heard it 35 years ago.

5         Anyway, you're looking to rush this case along

6    even though you are -- and I know.  I just see Mr.

7    Gravante behind me amending to what I say.  And it's not

8    surprising the clear your name aspect of the case.  But

9    isn't -- why should I do anything in this case until the

10   criminal case is resolved?  Because all we're going to

11   have -- all I'm inviting is a bunch of discovery issues.

12   I think you've suggested that the Fifth Amendment

13   invocation is teed up and ready to go.

14        And all I'm going to do is see you all the time

15   for discovery, which means that, which means that --

16   again, lawyers are always concerned about expenses.  And

17   I'm sure the clients here.  That's Mr. Gravante and Ms.

18   Burns are concerned about that.  All that means is --

19   since as you see there's no resources behind me, all that

20   means is you have a discovery referee at your own expense

21   to oversee discovery.

22        You wouldn't be seeing me.  I'm not going to

23   see you on document request 2 and interrogatory 3 and

24   invocation of privilege 4.  It's going to cost a heck of

25   a lot of money because, again, I'm not going to -- I'd

1    love to take the calls every day.  I'd love to.  This is

2    my favorite case right now.  In about half an hour it

3    won't be because the next case will be here.

4          So given all of that, aren't -- in wanting to

5    speed up this process or make the case move, aren't you

6    just inviting expense on the part of your client and

7    inviting potential delay because we're -- the war will be

8    fought in two fronts?  Pardon the other metaphor.

9          MR. HOU:  It's really a war that they brought

10   onto themselves.  So the idea that they're now

11   complaining of prejudice takes a certain degree of

12   chutzpa to claim prejudice for a war they brought.  They

13   brought this war.  We didn't ask for it.  We certainly

14   offered them meaningful alternatives, what Judge Wicks

15   called "reasonable alternatives" to getting this file.

16          I mean, that's what the ultimate irony about

17   this case is.  They say Cadwalader did nothing for us.

18   They don't deserve the fees they have.  They don't have a

19   right to the retaining lien, even though their complaint

20   says they have heavy reliance on Cadwalader.  And even

21   though they desperately say we need access to

22   Cadwalader's work produce because we need to defend

23   ourselves, here we are years after the fact.  So --

24          THE COURT:  Can they go -- you're not counsel.

25   You have no dog in the fight on the other metaphor in the

jd

1    criminal case.  Your client is simply a witness in that

2    case at most, right?

3              MR. HOU:  Correct.  So at the end of the day

4    Your, Honor, Your Honor is absolutely right.  There

5    shouldn't be this claim for expedited evidentiary

6    hearing.  Unlike the cases that the Kaplans have cited --

7              THE COURT:  Central Islip can do that.  Judge

8    Asrack can do that if she wishes.

9              MR. HOU:  Correct.

10             THE COURT:  She's already ruled, but the

11   application is there.  In other words, the question of

12   those files and their necessity and what they're -- how

13   those files relate to the allegations, that's for the

14   judge overseeing the case in Central Islip to talk about,

15   not me, because I'm guessing based on an indictment and

16   based on -- based on whatever happened in the grand jury

17   and whatever else.  But that's but -- I'm guessing.

18             MR. HOU:  You're right, Your Honor.  But I

19   think the Judge would feel duty bound to follow the prior

20   rulings that this issue has been decided, that on the

21   merits, on the merits the Court found that they did not

22   meets the Pomerantz standard.  They did not meet the

23   particularized need for the documents.

24             No. 2.  They didn't overcome the fact that

25   there are other reasonable alternatives.  And three,

1    they've never ever, ever, ever said they cannot pay a

2    bond or a surety or put their money in escrow or give the

3    money to Cadwalader on the promise of a return.  They've

4    never been deprived of their day in court, which is what

5    I heard on this motion to argue.  Woe is me.  We'll never

6    have a Court decide it.

7                In fact, Your Honor will decide it because

8    they've always made this case about the retaining lien.

9    Their malpractice case is based on the retaining lien,

10   the imposition of it, the fact that they allege that the

11   retaining lien and Cadwalader's motive in installing it

12   and activating it was to "cover up their misconduct."

13               So they've injected that into this issue --

14   into this case as the ultimate issue.  As Your Honor said

15   and properly ruled, you have no obligation to do

16   piecemeal work here.  You can do --

17               (Whereupon, there is a brief pause in the

18          proceedings.)

19               MR. HOU:  It's not my normal theme music.

20               THE COURT:  I didn't know if it was the theme

21   from Groundhog's Day.

22               MR. HOU:  But, Your Honor, at the end of the

23   day Your Honor's decision was entirely appropriate.

24   There's no prejudice to them.  This is a choice they

25   made.  This is the bed they made.  They should be forced

jd

1     to sleep in it frankly.

2              THE COURT:  Okay.  Thank you.

3              So I'm -- let me hear, if I could, from the

4     plaintiffs on the argument but also on the question of

5     discovery.  So the defendants want to move the case

6     forward.  Is that the desire of the plaintiffs as well,

7     especially giving you an upcoming trial for your client?

8              MR. SCHLESINGER:  Your Honor, you scheduled a

9     compliance conference or I guess a new -- a new

10    conference for April 15th.

11             THE COURT:  I'm sorry.  A new --

12             MR. SCHLESINGER:  For April 15th --

13             THE COURT:  In the criminal case?

14             MR. SCHLESINGER:  -- where we'll tend to work

15    out a discovery schedule.  You've already scheduled that

16    conference.

17             THE COURT:  Right.  Right.

18             MR. SCHLESINGER:  Okay.  Today the only issue

19    is the Court has found it has jurisdiction over the

20    retaining lien issue.  It had set a hearing for whenever

21    the trial is.  The only thing this motion is addressing

22    is the timing of the trial.  We think the Court made an

23    error in pushing that critical issue out.  We're not

24    saying that discovery shouldn't follow in the normal

25    course.  We'll come to the April 15th compliance

1    conference and work out a new schedule based upon the
2    decision.
3              But this Court has already determined and said
4    at the end of its decision that it's going to hold a
5    hearing in conjunction with the trial.  This motion is
6    addressed solely to the timing of that.  We didn't go to
7    the Appellate Division because the Appellate Division
8    couldn't give the relief on a motion, the ultimate relief
9    on the issue.  So it would have been a fruitless motion.
10   An appeal would be fruitless.
11             So our only possible remedy is getting this
12   Court to accelerate that hearing.  And if you think about
13   the justice of this, they walked away after receiving
14   millions of dollars from our client, millions, okay,
15   before the next bill was due because Todd Blanche left to
16   represent the current president, okay, and abandoned
17   them.  And you can't abandon a client on the precipice of
18   a critical moment in a case and expect to say, oh, we're
19   entitled to a retaining lien and more millions.
20             THE COURT:  All right.  So as to motion
21   sequence 4, the Court is denying the application upon
22   review of ECF 92 through 99.  The Court is not -- there's
23   nothing in the papers that suggests that the Court
24   overlooked anything that said the Court got it wrong.
25   And the sentiment expressed in Mr. Schlesinger's last

1    part of his presentation that this motion is only about
2    scheduling of hearing -- well, the scheduling of the
3    hearing is pages 19 through 22 of the brief. The
4    remainder of the brief is all about all the other things
5    I got wrong. So I don't -- I'm not sure that argument is
6    supported fully by the papers.
7         But anyway, as to the merits of the decision,
8    again, the motion is simply an invitation for a second
9    bite at the apple. And the Court is denying the motion
10   simply because motions for renewal and reargument are not
11   appropriate simply to tell the Judge that they got it
12   wrong the first time. That's what the Appellate Division
13   is for.
14        As to the Court scheduling the hearing at
15   trial, which trial date is apparently conflicting with
16   the scheduled criminal trial in Federal Court, which
17   would take precedence over this case at the outset, and
18   in any event when I'm not sure when this case is ready
19   for trial, this case here is ready for trial, given the
20   stay of discovery that was sought by and obtained by the
21   plaintiffs.
22        Nevertheless, the Court with scarce resources
23   schedules things to be one and done, which is that we'll
24   resolve this case and all of the attendant disputes of
25   this case in the trial of this matter. And that's what I

```
 1        had said earlier.  And, again, I'm not disturbing that
 2        ruling now.
 3                 And so the motion for renewal and reargument is
 4        denied in its entirety.  Again to the extent that the
 5        plaintiff needs to take relief from the merits of the
 6        decision or my schedule in Brooklyn, they're welcome to
 7        do that.  But that's where we are.  We're going to see
 8        each other on April 15th.  And we'll have our scheduling
 9        conference then.  And I'll set a trial date for you all
10        then.
11                 As to the defendants, I'm not interested in too
12        many motions to compel or motions for protective order or
13        dueling letters on all of the ills that you haven't
14        gotten or what you have gotten.  Put it -- or put simply.
15        Until I have a scheduling order in place and we're done
16        with my previous scheduling order, I suppose to channel
17        Billy Joel, you can cry in your coffee, but don't come
18        complaining to me.  He uses another word other than
19        "complaining."
20                 Mr. Schlesinger?
21                 MR. SCHLESINGER:  If the Court wants to appoint
22        a discovery master, we consent.
23                 THE COURT:  We'll address that on April 15th.
24                 MS. RICE:  Judge, if I can just speak?
25                 THE COURT:  Unless you want me to have a
```

1    scheduling order for you now and save you the time coming

2    here on April 15th.

3            MS. RICE:  Judge, I'm happy to enter this

4    scheduling order.

5            THE COURT:  You want to talk to Mr.

6    Schlesinger?  Can you talk to Mr. Schlesinger?

7            MS. RICE:  I'm very good at speaking with Mr.

8    Schlesinger.

9            THE COURT:  Is he good at listening and are you

10   good at talking, or are you listening to him?

11           MS. RICE:  We talk past each other a lot, but

12   sometimes we connect.

13           THE COURT:  Can I leave now and then have you

14   come back and get me some dates, and then you don't have

15   to come here on April 15th?

16           MS. RICE:  That sounds like a good idea, but

17   let me just raise one thing in this case.

18           It really -- discovery should be really quite

19   simple.  They're asserting a Fifth Amendment privilege.

20   If they're not producing information that supports the

21   elements of their case, it's over.  We make a motion and

22   it's done.  And that's -- I think a single motion, not

23   coming to cry in our coffee to you on every case.  It's

24   simple.  It comes to the point, and it should be over.

25           And if -- this is not a case where a defendant

1    is being sued and his first -- and his rights are being

2    impacted because he's being put in a position in a civil

3    case. This is a defendant who knew they had SCC charges

4    already against them. They knew they were the targets of

5    an investigation. And they came to this Court to tell us

6    their tale of woe. And now they're saying, well, we

7    really can't just tell it to you right now. You just

8    wait.

9           THE COURT: So on the -- I guess again we're

10    all getting ahead of ourselves. You're saying this will

11    be a very quick motion for summary judgment. I think

12    there's probably a motion to compel discovery even before

13    that, right? But you're saying you wouldn't have to go

14    through the expense of a special referee?

15           MS. RICE: Correct.

16           THE COURT: All right. Let's -- to quote Judge

17    Marano, I'm not going to take an aspirin until I have a

18    headache. Not a headache to have you all here. Let's

19    get a scheduling order.

20           Mr. Schlesinger?

21           MR. SCHLESINGER: Just to be clear, we served

22    discovery demands on them that haven't been responded to.

23           THE COURT: Oh, terrific.

24           MS. RICE: You had a stay. You had a stay.

25           THE COURT: Everybody is ready to respond. As

1    the Kindergartener teacher says, don't talk among

2    yourself.  Not that you're Kindergarten.  Talk among

3    yourself.  A Kindergarter teacher won't say that.  As a

4    college teachers says, talk among yourselves.  Work out a

5    schedule.  I'll come back.  Or if you all agree on

6    everything, no problem.

7            In terms of trial dates, I don't think I can

8    try this case in 2025 given the discovery.  But I'll

9    leave it for all you to think about when the case can be

10   tried.  Give me a season of the year, all right.  Because

11   my dance card is full from now until the end of 2025.

12           MS. RICE:  Is May 5th still available?

13           THE COURT:  Oh.  May 5th?  You're not going to

14   have this case ready for trial May 5th.  But you talk

15   about it with Mr. Schlesinger, okay.  All right.  I'll

16   come back in a couple of minutes.  Thanks everybody.

17           The minutes thus far for the proceeding, the

18   bill's going to come to the defendants who have prevailed

19   on the motion to renew and reargue.  And we'll make it

20   easy.  You're going to get the entire bill, all right,

21   because I'm going to be probably on the bench the most 5

22   minutes about this.

23           MS. GERSON:  Your Honor, I apologize.  Can I

24   ask for one clarification regarding your decision on this

25   motion?  I'm sorry.  Real quick.

1       THE COURT:  Denied.  How about that?  Is that
2   easy enough?
3       MS. GERSON:  My understanding --
4       THE COURT:  Denied in its entirety.
5       What else?
6       MS. GERSON:  There was some confusion because
7   Mr. Hou was saying this issue has already been decided,
8   and Your Honor seemed to agree with that.  My
9   understanding of your prior decision was that you did not
10  deny the motion to expunge the retaining lien, but that
11  you simply had held that a hearing was required.  And I
12  just want to clarify that that is Your Honor's intention
13  here.
14      THE COURT:  Miss Gerson, I denied your motion
15  in its entirety.  That means that this motion is nothing,
16  right?  It's nothing.  It was wonderful to read it.  It
17  was great.  But the effect of it is nothing.  Nothing has
18  changed, right?  We're all doing this long enough.
19      What other clarification do you need?
20      MS. GERSON:  That's all, Your Honor.
21      THE COURT:  Thanks.
22      MS. GERSON:  Thank you.
23      (Whereupon, a short recess was taken.)
24      THE CLERK:  All rise.
25      THE COURT:  I'm not changing my earlier

1    decision.

2                    MR. SCHLESINGER:  No.  No.  No.

3                    THE COURT:  So the clarification.  When nothing

4    has changed, there's no need for clarification.

5                    All right.  Anything else?  You need to be

6    heard on that?  Miss Gerson?

7                    MS. GERSON:  No, thank you.

8                    THE COURT:  All right.  So now scheduling.

9                    What's going on, Miss Rice?  What's going on?

10                   MS. RICE:  As you suspected, two seconds after

11   you left the courtroom there was a disagreement as to

12   discovery.  And I want to go back to what I said before.

13   I'm sorry.  I want to go back to what I said before.  And

14   that is, this is a simple issue.  The people have the

15   burden of proof.  Asserted their Fifth Amendment rights

16   in writing.  They're not producing anything.  They're not

17   appearing for depositions.  And we're entitled to get a

18   dismissal.

19                   I just want to tee that issue up, Judge.  It

20   will save everybody a lot of heartache.  At the end of

21   the day it's going to be the issue that carries this case

22   unfortunately.  And I want to get it done now rather than

23   later.

24                   THE COURT:  So you want scheduling dates for

25   meaningful discovery responses, depositions and then of

jd

1     course the invitation to bring a motion to compel if you

2     need to.  Okay.  I got you.

3                    Mr. Schlesinger, go ahead.

4                    MR. SCHLESINGER:  We're up to the motion to

5     compel.  We served discovery demands earlier.  They're

6     refusing to comply with them on the grounds that some of

7     it calls for releasing the documents in their retaining

8     lien.

9                    THE COURT:  Okay.

10                    MR. SCHLESINGER:  And one of our major claims

11     in this case is they overbilled without knowing what they

12     did in the file and whether or not it justifies the

13     billing that is a seminal issue in this case.

14                    In addition, the issue that she's raising, that

15     it being a simple case, is totally fallacious.  Because

16     at best if my clients decide -- and they have not yet

17     decided to take the Fifth as any issue, that only creates

18     a presumption that's rebuttable by the conduct of the

19     defendants.  And with appropriate discovery we'll be able

20     to establish that the defendants are culpable and do not

21     deserve the money and do not deserve any remedies against

22     my client.  The summary judgment they're seeking is money

23     against our client.

24                    MS. RICE:  Judge --

25                    MR. SCHLESINGER:  And without seeing the file

```
 1    and the work --
 2                THE COURT:  Everybody sit down, please.
 3                MS. RICE:  Judge --
 4                THE COURT:  The constant interruptions are not
 5    helpful, Miss Rice.  And you're --
 6                MS. RICE:  I understand, Judge.  I'm sorry.
 7                THE COURT:  They are not helpful.  They are not
 8    helpful.
 9                I'll see the lawyers back in chambers, please.
10                (Whereupon, a short recess was taken.)
11                THE COURT:  Please everyone be comfortable.
12                All right.  So I had a chance to speak with the
13    lawyers back in chambers about scheduling issues.  And I
14    thank the lawyers, the litigating lawyers, for their
15    courtesy and their civility and of course their open
16    calendars and their flexibility while we were talking
17    together.
18                The end of the movie, if you will, will be
19    March 9th of 2026 when we'll try this case on the merits.
20    And the hearing that we've discussed earlier will be had
21    that day.  And again I schedule everything in light of
22    the needs of the Court, the resources of the Court and
23    the desire of both sides that are here, the palpable
24    desire to resolve this case expeditiously.
25                And I thank the lawyers for the motions.  I've
```

1     already complimented Miss Gerson and Miss Rice for the

2     motions.  I compliment them again because it does make me

3     recognize again that this case does need to be brought to

4     resolution, even though I don't think our May 5, 2025,

5     trial date is practicable.  So March 9th of 2026 is the

6     nearest mutually convenient and available date for

7     everyone.

8              To get there, to the extent that anyone has

9     additional document requests and -- well, any discovery

10    requests at all -- I guess that would include notices of

11    deposition -- serve them by March 10th.  And then

12    responses by April 10th.  So if there's depositions to be

13    taken, they should be taken by April 10th, that have been

14    -- that have been in the hopper so far.

15             I'm guessing from when I talked to the lawyers

16    that nothing's going to happen between now and April

17    10th, which means that on April 15th we'll be discussing

18    a motion to compel, because each side has its own view

19    about why production of various documents is not

20    appropriate and depositions are not appropriate and that

21    very little will happen at the depositions.

22             So we'll see where we are on April 15th at 2:00

23    p.m. live and in person.  I think that's all we can talk

24    about and all we have talked about.  That's all that we

25    can do today.  But let me just check.

1      Miss Gerson or Mr. Schlesinger, is there
2  anything further we should talk about today?
3      MR. SCHLESINGER:  Nothing further, Your Honor.
4      THE COURT:  Miss Gerson?
5      MS. GERSON:  Not for me.
6      THE COURT:  Miss Rice, anything further?
7      MS. RICE:  That's it, Your Honor.  Thank you so
8  much.
9      THE COURT:  Everybody, have a wonderful day.
10      Miss Rice, you're getting the bill for all the
11  minutes or Mr. Hou is getting the bill for all the
12  minutes.
13      MS. RICE:  That's fine, Judge.
14      THE COURT:  Thank you so much.
15      And the written decision and order of the Court
16  with respect to motion sequence 4 will be the minutes of
17  these proceedings, which Miss Rice will get the bill for.
18  She will get the bill for the entire minutes.  And I will
19  so order them, which will be the written decision and
20  order for enforcement and appellate purposes with respect
21  to motion sequence No. 4.
22      Thank you so much everybody.
23      (Continued next page.)
24
25

1              MS. RICE:  Thank you.

2    *                    *                    *

3    CERTIFIED THAT THE FOREGOING IS A TRUE AND ACCURATE

4    TRANSCRIPT OF THE STENOGRAPHIC MINUTES IN THIS CASE.

5

6

7    JENNIFER DEVLIN
     Senior Court Reporter

8

9

10   SO ORDERED:

11   _____        4/7/2025

12   HON. TIMOTHY S. DRISCOLL               DATED
     Supreme Court Justice

13

14

15

16

17

18

19

20

21

22

23

24

25