**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

      v.

ADAM KAPLAN and DANIEL KAPLAN,

          Defendants.

Case No. 2:23-CR-00293 (JMA) (JMW)

## DANIEL KAPLAN'S MOTIONS *IN LIMINE*

Michael Tremonte
Noam Biale
Alexandra Conlon
Claire Blumenthal Buck
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Tel: 212.202.2600
Email: mtremonte@shertremonte.com

*Attorneys for Daniel Kaplan*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT ................................................................................................................................... 2

I.     THE COURT SHOULD EXCLUDE EVIDENCE CONCERNING ███'S PURPORTED INVESTIGATION OF "THE KAPLANS" AND PRECLUDE THE GOVERNMENT FROM INTRODUCING EVIDENCE OF ALLEGED COMPLAINTS BY FORMER CLIENTS OF EITHER ADAM OR DANIEL KAPLAN THROUGH ███ OR FINANCIAL SERVICES WITNESSES. ................................. 2

       A.     Evidence of ███'s Purported Investigation Should be Excluded Under FREs 403, 701, and 802. ....................................... 2

       B.     Evidence from ███ or Financial Institution Witnesses Concerning Statements by Former Clients of Adam and/or Daniel Kaplan Should be Excluded Under FREs 602, 801, 803 and 805. .......................................................................... 5

II.    THE COURT SHOULD EXCLUDE EVIDENCE PERTAINING TO THE ADULT PROTECTIVE SERVICES INVESTIGATION AS TO ███████ ........................................................................... 7

III.   THE COURT SHOULD PRECLUDE OPINION TESTIMONY CONCERNING ADAM AND/OR DANIEL KAPLAN'S BUSINESS PRACTICES UNDER FRE 701 ................................................................. 8

IV.   THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM INTRODUCING UNAUTHENTICATED EVIDENCE FROM THE ICLOUD ACCOUNT ASSOCIATED WITH THE APPLE ID ████@AOL.COM ................................................................. 9

V.     THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM ARGUING THAT DANIEL AND ADAM KAPLAN'S CLOSE FAMILY RELATIONSHIP IS EVIDENCE OF THE ALLEGED CONSPIRACY. ............. 11

VI.   THE COURT SHOULD EXCLUDE EVIDENCE CONCERNING ADAM AND DANIEL KAPLAN'S ALLEGED FAILURE TO COMPLY WITH ███'S INTERNAL POLICIES AND EVIDENCE OF ACTIONS TAKEN BY REGULATORS, INCLUDING THE SEC AND FINRA UNDER FRES 401, 403, 801, AND 803 .......................................................... 12

VII.    MOTIONS UNDER FRES 401 AND 403.............................................................. 16

      A.    The Court Should Exclude Testimony Concerning ███████
                    ███████ as Irrelevant and Confusing.......................................... 16

      B.    The Court Should Bar Evidence from Referring to "the Kaplans"
                Where The Evidence Does Not Specify Which Defendant,
                if Either, Undertook an Alleged Action Because Such
                Evidence is Unduly Confusing and Prejudicial.. .......................... 17

      C.    The Court Should Not Permit the Government to Present
                Testimony from Twenty-four Former Clients Because Such
                Testimony Would be Cumulative and Unduly Prejudicial............ 18

      D.    The Court Should Exclude Evidence Concerning Daniel
                Kaplan's Income and Assets as Unduly Prejudicial...................... 20

      E.    The Court Should Exclude Irrelevant, Inflammatory Testimony
                from Former Clients Concerning Alleged Harms to Their
                Mental Health and Well-Being. .................................................... 21

      F.    The Court Should Not Permit the Government to Characterize
                Alleged Conduct as a "Ponzi" Scheme or to Refer to Payments
                as "Ponzi-like" Payments............................................................ 22

VIII.    THE COURT SHOULD SEQUESTER WITNESSES UNDER FRE 615........... 22

CONCLUSION.................................................................................................................. 23

**Cases**

*Bank of China v. NBM, LLC,*
    359 F.3d 171 (2d Cir. 2004) ................................................................. 9

*Morrison v. Ocean State Jobbers, Inc.,*
    180 F. Supp. 3d 190 (D. Conn. 2016) ................................................. 13

*Old Chief v. United States,*
    519 U.S. 172 (1997)............................................................................. 20

*U.S.A. v. Serrano,*
    No. 07-cr-118 (CAS), 2008 WL 11411103 (C.D. Cal. Feb. 28, 2008) ...................... 8

*United States v. Anderson,*
    933 F.2d 1261 (5th Cir. 1991) ............................................................ 14

*United States v. Armone,*
    363 F.2d 385 (2d Cir. 1996) ............................................................... 12

*United States v. Brady,*
    26 F.3d 282 (2d Cir. 1994) ................................................................. 19

*United States v. Dukagjini,*
    326 F.3d 45 (2d Cir. 2003) ................................................................... 4

*United States v. Ferguson,*
    No. 06-cr-137 (CFD), 2007 WL 4240782 (D. Conn. Nov. 30, 2007)................................ 20, 21

*United States v. Grinage,*
    390 F.3d 746 (2d Cir. 2004) ................................................................. 3

*United States v. Hendricks,*
    921 F.3d 320 (2d Cir. 2019) ............................................................... 22

*United States v. Hunt,*
    534 F. Supp. 3d 233 (E.D.N.Y. 2021) ................................................. 10

*United States v. James,*
    607 F. Supp. 3d 246 (E.D.N.Y. 2022) ................................................. 8, 9

*United States v. Jamil,*
    707 F.2d 638 (2d Cir. 1983) ............................................................... 19

*United States v. Klein,*
    No. 16-cr-442 (JMA), 2017 WL 1316999 (E.D.N.Y. Feb. 10, 2017) ................................11, 15

*United States v. Rosa*,
    11 F.3d 315 (2d Cir. 1993) ................................................................11

*United States v. Sliker*,
    751 F.2d 477 (2d Cir. 1984) .............................................................. 10

*United States v. Stahl*,
    616 F.2d 30 (2d Cir. 1980) ................................................................ 20

*United States v. Vayner*,
    769 F.3d 125 (2d Cir. 2014) .............................................................. 10

*United States v. Wittig*,
    No. 03-cr-40142(JAR), 2005 WL 1227938 (D. Kan. May 23, 2005) ..................................... 13

**Rules**

U.S.S.G. § 2B1.1(b)(2)(A)(iii) ................................................................ 19

Fed. R. Evid. 401 ........................................................................ passim

Fed. R. Evid. 403 ........................................................................ passim

Fed. R. Evid. 602 ............................................................................ 5

Fed. R. Evid. 615 ........................................................................... 22

Fed. R. Evid. 701 ............................................................................ 8

Fed. R. Evid. 801 ............................................................................ 5

Fed. R. Evid. 802 ............................................................................ 4

Fed. R. Evid. 803 ............................................................................ 6

Fed. R. Evid. 805 ............................................................................ 5

Fed. R. Evid. 901 ....................................................................9, 10, 11

# PRELIMINARY STATEMENT

Daniel Kaplan, through counsel, respectfully moves *in limine* to preclude inadmissible evidence that he anticipates, based on Rule 16 discovery and recently produced 3500 material, the government will seek to introduce.

The government's two productions of 3500 material thus far[1] confirm many of Daniel Kaplan's concerns about the government's case—witnesses routinely lump the two Kaplan brothers together, fail to (or cannot) distinguish them and attribute conduct to the brothers collectively and, as to witnesses from ███ relate extensive hearsay testimony about alleged client complaints and findings of ███ 's purported internal investigation into the conduct underlying the charges here. Were the government to present the evidence in the form that much of it appears in the 3500, the trial would include substantial amounts of undifferentiated hearsay about "the Kaplans," rather than specific, admissible evidence about the alleged conduct of Daniel Kaplan. Thus, the risks of prejudice that Daniel Kaplan raised in his severance motion now require the Court to carefully police the introduction of evidence in order to ensure a fair trial and prevent a conviction based on guilt by association.

Daniel Kaplan joins Adam Kaplan's motions *in limine* to the extent applicable to him.

---

[1] As noted in Daniel's August 13 letter to the Court, ECF No. 246, the government's piecemeal production of 3500 has necessarily provided only a partial picture of its likely presentation at trial. Certain witnesses identified on the government's witness list are absent altogether. Accordingly, Daniel anticipates making additional motions *in limine* once additional 3500 material is produced.

1

**ARGUMENT**

I.   **The Court Should Exclude Evidence Concerning ███'s Purported Investigation of "the Kaplans" and Preclude the Government from Introducing Evidence of Alleged Complaints by Former Clients of either Adam or Daniel Kaplan through ███ or Financial Services Witnesses.**

   A.   **Evidence of ███'s Purported Investigation Should be Excluded Under FREs 403, 701, and 802.**

The 3500 material produced thus far suggests the government intends to introduce evidence concerning ███'s investigation of the Kaplans through testimony from ███ ███ ███'s outside compliance consultant, ███, ███'s Chief Operations Officer, and ███, an ███ billing subcontractor (the "███ witnesses") and through internal ███ documents. The details of ███'s internal "investigations" into Adam and/or Daniel Kaplan, and any putative "findings" that resulted from them, should be excluded on several related grounds. This includes any investigation into Adam and/or Daniel Kaplan that began during their time with ███ and culminated in their termination, as well as ███'s *post hoc* attempts to investigate after ███ terminated the defendants.

*First*, testimony or documents as to any findings or conclusions of ███'s investigation would be improper expert testimony—based, in turn, on inadmissible hearsay (client complaints)—as to an ultimate issue. ███—through witnesses like ███ ███, and ███—purported to investigate substantially the same conduct that is alleged in Count One of the Superseding Indictment. ECF No. 149 ¶¶ 8-24. For example, it appears that ███ attempted to determine if either Adam or Daniel Kaplan misrepresented to clients the advisory fee percentage they would be charged, made false statements regarding the basis for various fees and charges so as to misappropriate clients' funds directly, and conducted transactions on their clients' behalf without their clients' authorization. ███ also purported to investigate the very same electronic charges that form the basis of many, if not all, of the

2

substantive wire fraud counts.  ECF No. 149 ¶ 36.  Because the allegations the ███ witnesses purported to investigate are the same as those the government intends to prove at trial, permitting ███ witnesses to testify about their conclusions will effectively usurp the role of the jury.  *See* Gov. Opp'n to D. Kaplan's Pretrial Mot., ECF No. 198 at 2-5.  In short, the ███ witnesses will testify that they found the Kaplans guilty and the jury should, too, in contravention of established Second Circuit precedent.

In *United States v. Grinage*, the government presented testimony from a DEA agent who testified about his understanding and interpretation of several wiretapped phone calls based on his professional training and experience, his review of hundreds of other wiretapped phone calls in the case, and his knowledge of the investigation.  390 F.3d 746, 747-49 (2d Cir. 2004).  The agent walked the jury through his interpretation of various terms used by the declarants on the wiretaps and about what those terms meant in the context of the investigation.  *Id.* at 748 (testifying that "I need about nearly four" meant the caller needed four ounces of PCP).  The government argued such testimony was helpful, proper opinion testimony from a lay, summary witness, who had reviewed all of the recorded phone calls and could "assist the jury by placing" particular calls "in context."  *Id.* at 750.  The Second Circuit rejected that argument, and held that the agent's testimony amounted to improper expert opinion testimony:  "Whether labeled as an expert or not, the risk that he was testifying based upon information not before the jury, including hearsay, or at the least, that the jury would think he had knowledge beyond what was before them, is clear."  *Id.*  Such testimony impermissibly "usurped the function of the jury to decide what to infer from the content of the calls and in particular what to infer from the calls involving [a specific defendant] as to [that defendant's] participation in the drug ring."  *Id.*

Testimony or documents as to ███ investigations would present the same problem here. Whether the government labels the ███ witnesses as compliance experts or not, there is a grave risk that the jury will give special weight to their conclusion that Adam and/or Daniel Kaplan engaged in the charged conduct based on the ███ witnesses' review of hearsay evidence not before the jury and their supposed expertise in compliance. *See also United States v. Dukagjini*, 326 F.3d 45, 53 (2d Cir. 2003) (warning of the risk of prejudice where a case agent testifying as an expert also acts as a fact witness, testifying about the investigation, and "summarizes his beliefs about the defendant's conduct based upon his knowledge of the case"). Evidence as to ███'s investigations will also invariably necessitate a mini-trial on those investigations' scope, the manner in which they were conducted, and the competence of the ███ employees who conducted them. The result will be undue delay and jury confusion.

*Second*, even if the Court precludes the government from eliciting improper opinion testimony from the ███ witnesses concerning their findings, any testimony about the details of their investigation will necessarily call for and rely on improper hearsay. The ███ witnesses are not percipient fact witnesses to any of the conduct alleged in the Superseding Indictment. Instead, the ███ witnesses only began considering the possibility of misconduct after it had allegedly occurred—in many cases, months or years later. Furthermore, the ███ witnesses relied principally on their review of inadmissible hearsay—out-of-court statements by former clients of Adam and/or Daniel Kaplan. Permitting this evidence to come in through testimony about their investigation would be an end-run around Federal Rule of Evidence 802.

*Third*, the Court should preclude testimony concerning the existence and scope of ███'s purported investigation into Adam and Daniel Kaplan because such testimony is highly prejudicial and of negligible probative value, if any. The jury is likely to infer that Adam and

4

Daniel must have done something wrong if ▮ investigated them for wrongdoing, even if the Court carefully polices what the ▮ witnesses can say about the details and findings of their investigation. Indeed, even if the jury hears only that an investigation occurred and nothing more, it will inevitably speculate about the findings and outcome of the investigation. Because the fact that ▮ launched an investigation is not itself probative of any fact at issue under Fed. R. Evid. 401, and is highly prejudicial under Fed. R. Evid. 403, the fact of the investigation should also be precluded. Such a ruling would, of course, not preclude the government from presenting non-hearsay evidence that is otherwise admissible concerning the alleged conduct by Adam or Daniel that was the impetus for and subject of the ▮ investigation.

**B.**     **Evidence from ▮ or Financial Institution Witnesses Concerning Statements by Former Clients of Adam and/or Daniel Kaplan Should be Excluded Under FREs 602, 801, 803 and 805.**

Whether in connection with ▮'s purported investigation or not, any testimony from an ▮ or financial institution witness concerning the content of a client's alleged complaint is impermissible hearsay insofar as it is offered for its truth. Fed. R. Evid. 801. Such testimony would also necessarily be based on information outside of the testifying witness's personal knowledge under Federal Rule of Evidence 602. For the same reasons, an ▮ or financial institution witness's testimony as to his or her understanding of Adam or Daniel Kaplan's conduct in connection with a particular former client is equally out of bounds. Written materials created by ▮ or financial institutions that purport to document client complaints must also be barred as double hearsay. Such documents—which would include, but are not limited to emails, notes, and information technology systems entries—are out-of-court statements that ostensibly memorialize the hearsay statements of another declarant (a former client of either Adam or Daniel Kaplan) and would thus be inadmissible under Fed. R. Evid. 805.

None of the hearsay exceptions apply here. Such documents, for example, do not qualify as business records under Federal Rule of Evidence 803(6). As to ▮▮▮ documents, for instance, ▮▮▮▮▮▮▮▮ 3500 statements make clear that he (and, by extension, ▮▮) took an ad hoc approach to client complaints, such that any related documents were not made in the course of regularly conducted business activity. *See, e.g.*, GX-3500-▮-1 at 313 (SEC: "▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); *see also id.* at 261–67 (SEC questioning ▮▮▮▮▮ failure to follow up with client after an alleged complaint). ▮▮▮▮▮ sworn testimony to the SEC reflects a one-man compliance operation, where he took unilateral—and often idiosyncratic and inconsistent—action in response to each complaint. ▮▮▮▮▮ testified, for example, that "▮▮▮▮▮▮▮▮▮▮" to determine what was a complaint and "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."[2] *Id.* at 54–55. Indeed, ▮▮▮▮▮ testified that his response to a specific alleged complaint by a former client did not reflect internal policy or respond to external regulatory pressure, but was "▮▮▮▮▮▮▮▮▮▮

▮▮▮ *Id.* at 261. *See also id.* at 271–72 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"). Any such

---

[2]    Even in November 2023, ▮▮▮▮▮ frequently struggled to recall what ▮▮ 's practices or policies were, if any even existed. *See, e.g.*, GX-3500-▮-1 at 123 (stating, as to ▮▮ 's approach to reviewing billing: "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮ ").

documents, moreover, cannot be admitted for the additional reason that they reflect or rely on a second layer of hearsay—*i.e.*, the declarant's out-of-court complaint.

As the government's preliminary witness list reflects, the government intends to present testimony directly from an extraordinary number of former clients. The government should not be permitted to bolster the testimony of its witnesses by presenting hearsay testimony or records from ▮ or financial institutions concerning those and other clients' prior hearsay statements.

## II. The Court Should Exclude Evidence Pertaining to the Adult Protective Services Investigation as to ▮.

For substantially the same reasons set forth in Section I, the Court should preclude any reference to an investigation by Adult Protective Services ("APS"), a state agency with jurisdiction over, among other things, allegations of financial exploitation of vulnerable adults, on behalf of trial witness ▮, into Adam and Daniel Kaplan. We anticipate, based on materials in Rule 16 discovery and references to ▮ social worker in the 3500 material, that the government may attempt to introduce such evidence, either through documents or ▮ testimony. Specifically, that material indicates that ▮ complained to APS about her dealings with Adam and/or Daniel Kaplan and that the agency began an investigation based on those complaints. As with ▮'s purported investigation, APS was also focused on the alleged misconduct at the heart of the government's case. APS, too, relied on inadmissible hearsay, purported to make findings as to the ultimate issue of guilt, and its investigation is of negligible probative value, while posing an enormous risk of unfair prejudice. APS's implicit authority as a government agency further heightens the risk of undue prejudice and invites the jury to abdicate its role as finder of fact.

**III.     The Court Should Preclude Opinion Testimony Concerning Adam and/or Daniel Kaplan's Business Practices Under FRE 701.**

We anticipate the government will seek to introduce other improper opinion testimony concerning Adam and/or Daniel Kaplan's business practices.  Based on the ▉ witnesses' 3500 material, for example, the government appears poised to introduce evidence concerning those witnesses' impressions of how Adam and/or Daniel Kaplan's alleged business practices compared to industry practices, including testimony characterizing the percentage of fees charged to their clients as higher than the industry standard or describing the caliber of their book of business.  We anticipate the government will elicit similar testimony from former clients that, for example, ▉ or others told them their fees exceeded industry norms.

Rather than calling an expert witness, it appears the government intends to use the ▉ witnesses to introduce what is essentially expert opinion testimony.  Rule 701 of the Federal Rules of Evidence provides that a lay witness's "testimony in the form of an opinion is limited to one that is (a) rationally based on the witness's perception," "(b) helpful to clearly understanding of the witness' testimony or to determining a fact in issue" and (c) "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  To the extent the government intends to ask the ▉ witnesses to "draw upon their collective experiences as" compliance professionals, "or opine whether Defendant[s'] billing and/or billing practices were 'appropriate' or 'correct'" "[s]uch testimony crosses the line from lay to impermissible expert opinion because it calls for each of these witnesses to draw upon specialized experiences accumulated throughout the course of their careers as [compliance processionals] to render an opinion on Defendant[s'] billing."  *United States v. James*, 607 F. Supp. 3d 246, 259 (E.D.N.Y. 2022).  Pursuant to Fed. R. Evid. 701, a lay witness may not testify about "matters outside their personal experience, *e.g.*, custom and practice in an industry."  *U.S.A. v. Serrano*, No. 07-cr-118

(CAS), 2008 WL 11411103, at *1 (C.D. Cal. Feb. 28, 2008) (citing *Bank of China v. NBM, LLC*, 359 F.3d 171 (2d Cir. 2004)). Neither the ███ witnesses nor the Kaplan client witnesses should be permitted to testify concerning their opinion "as to the appropriateness of billing" by the Kaplans. *See, e.g.*, GX-3500-██-1 at 119 (███████ testifying he cannot speak to whether a policy existed "████████████████████████████████████████████████

███████████████"); *James*, 607 F. Supp. 3d at 259 (precluding former employees and patients from testifying concerning the "correctness" or "accuracy" of defendant's billing in medical billing fraud case).

## IV. The Court Should Preclude the Government from Introducing Unauthenticated Evidence from the iCloud Account Associated with the Apple ID ███████@aol.com.

Daniel Kaplan expects the government will seek to introduce records of communications that were purportedly made using the iCloud account associated with the Apple ID ███████@aol.com. We further expect that through witness testimony and argument the government will characterize all such communications as having been sent or received by Daniel Kaplan, as opposed to Adam Kaplan or anyone else. Because the government cannot meet its burden of authenticating these communications as what the government will claim they are—communications by Daniel Kaplan—the government should be precluded from offering them at trial.

Rule 901 provides that the proponent of evidence "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The rule sets forth a non-exhaustive list of the ways evidence can be authenticated including, among other ways, through testimony of a witness with knowledge, evidence of distinctive characteristics of the item "taken together with all the circumstances," and evidence demonstrating that a given process or system that created the evidence produces an accurate

result. Fed. R. Evid. 901(b)(1), (4), (9). "The type and quantum of evidence necessary for authentication is thus related to the purpose for which the evidence is offered." *United States v. Sliker*, 751 F.2d 477, 488 (2d Cir. 1984).

While a certification by a custodian of the disputed records is sufficient to establish that the records were produced by that custodian, where the records are "offered for the purpose of establishing that a person made particular statements—that is, the relevance of the proffered evidence 'hinges on the fact of authorship'—a certification by a custodian in itself cannot be sufficient for purposes of authentication because, as already described, such a certification serves a limited role: it simply shows that a record was made at or near a certain time, that the record was kept in the course of a regularly conducted business activity, and that the making of the record was a regular practice of that activity." *United States v. Hunt*, 534 F. Supp. 3d 233, 254 (E.D.N.Y. 2021). Such a certification is not, however, sufficient to attribute that a record was made by, or reflects the statement of, a specific person. Under Rule 901, to introduce communication records and their content as the communications of a particular person, further evidence, circumstantial or otherwise, is required to adduce proof sufficient "so that a reasonable juror could find in favor of authenticity or identification." *Id.* at 255 quoting *United States v. Vayner*, 769 F.3d 125, 129–30 (2d Cir. 2014).

Here, the Rule 16 materials produced by the government make clear that the Apple ID account for the username ███@aol.com is linked to an iCloud email account used by both Adam and Daniel Kaplan and to multiple phone numbers that are associated with both Adam and Daniel Kaplan. Without testimony or additional evidence—none of which is available from any government witness—the Rule 16 records alone cannot be authenticated as communications by Daniel Kaplan (or Adam Kaplan, for that matter) and therefore cannot be admitted as such at

trial.  In the event the government attempts to offer communications from the ███████@aol.com

Apple ID as communications of *either* Daniel or Adam, or both, such an offer would fail to

satisfy the requirements of Rule 901, and would create an unacceptable risk of jury confusion

and unfair prejudice under Rule 403.

## V.     The Court Should Preclude the Government from Arguing that Daniel and Adam Kaplan's Close Family Relationship Is Evidence of the Alleged Conspiracy.

The government should be precluded from arguing that the close relationship between

Daniel and Adam Kaplan is probative evidence of a conspiratorial agreement and from

introducing evidence to support that claim.  In certain circumstances, the government can

introduce evidence of a close personal relationship between co-defendants and argue that the jury

should construe the co-defendants' close relationship as probative evidence of their participation

in a conspiracy with one another.  *See e.g.*, *United States v. Rosa*, 11 F.3d 315, 334 (2d Cir. 1993)

(upholding admission of evidence co-conspirators engaged in prior bad acts together "to inform

the jury of the background of the conspiracy charged, in order to help explain how the illegal

relationship between participants in the crime developed, or to explain the mutual trust that

existed between coconspirators."); *United States v. Klein*, No. 16-cr-442 (JMA), 2017 WL

1316999, at *10 (E.D.N.Y. Feb. 10, 2017) (permitting government to introduce evidence of co-

defendant's continued close relationship after alleged criminal conduct based on government's

argument that "development of a relationship of trust between the participants" is probative of

conspiracy and on other grounds).

Though evidence of a close relationship between alleged co-conspirators may be

admissible as evidence of a conspiracy in some cases, it would be misleading and unduly

prejudicial here.  Daniel and Adam are inextricably tied together for reasons entirely unrelated to

any alleged criminal conduct—they are twin brothers.  They have shared a close relationship

since long before the alleged offenses occurred. Thus, on the particular facts of this case, the existence of a close familial relationship between Daniel and Adam Kaplan is simply not probative of conspiracy and permitting the government to introduce evidence and argument to the contrary runs the risk of "guilt by association." *United States v. Armone*, 363 F.2d 385, 403–04 (2d Cir. 1996). Jurors cannot be permitted to "infer membership in a conspiracy merely because of family relationship." *Id.* If the Court permits the government to argue that evidence of the Kaplans' close relationship is evidence of a conspiratorial agreement, the traditional safeguard courts rely on to avoid the risk of unfair prejudice—an instruction to the jury—will not suffice. The Kaplans' indistinguishable appearances, voices, and mannerisms, their shared surname, and the similarities and overlap of their lives already create an enormous risk that the jury will conflate evidence about one with evidence that is attributed only to the other and will erroneously infer that their extraordinary and uncanny similarities prove they are co-conspirators. The only way to avoid this unfair risk of prejudice is to preclude the government from introducing evidence concerning Adam and Daniel Kaplan's close relationship and from arguing that their close relationship and twinship is evidence of a conspiracy.

**VI.     The Court Should Exclude Evidence Concerning Adam and Daniel Kaplan's Alleged Failure to Comply with ▮▮'s Internal Policies and Evidence of Actions Taken by Regulators, Including the SEC and FINRA Under FREs 401, 403, 801, and 803.**

Based on the 3500 material, Daniel Kaplan expects that the government will elicit testimony from ▮▮ witnesses that Daniel and Adam Kaplan violated, or behaved in a manner inconsistent with, ▮▮'s internal rules and policies. *See e.g.*, GX-3500-▮▮-1 at 158–62 (discussing whether Adam and Daniel Kaplan complied with ▮▮'s requirements to disclose outside business activities). We also anticipate the government will introduce evidence concerning the stayed case filed against Adam and Daniel Kaplan by the Securities Exchange

Commission ("SEC"), *U.S. Secs. & Exch. Comm'n v. Kaplan*, 23 Civ. 1648 (JMA), ECF No. 63 (E.D.N.Y. Oct. 31, 2023), and actions taken by the Financial Industry Regulatory Authority ("FINRA"), such as adjustments to their BrokerCheck Reports.

First, Daniel Kaplan seeks to exclude the aforementioned evidence as irrelevant under Fed. R. Evid. 401. While descriptions of his alleged conduct underlying the ▮ witnesses' opinion that he may have violated ▮'s internal rules and policies, and descriptions of his alleged conduct that prompted actions by the SEC and FINRA may very well be relevant to this case, the fact that ▮ compliance personnel and/or regulators concluded that (or considered whether) Daniel Kaplan violated internal or external ▮ rules and regulations does not itself make any fact "of consequence in determining the action" "more or less probable." Fed. R. Evid. 401.

Second, even if evidence concerning alleged violations of ▮, SEC, or FINRA rules or regulations had some minimal probative value, such evidence should be excluded under Fed. R. Evid. 403 because it is substantially more prejudicial than probative. Evidence that a law enforcement body, like the SEC, conducted an investigation and concluded there was a sufficient basis to pursue a civil enforcement case against Daniel Kaplan carries a special danger of unfair prejudice, "namely, portrayal of [Daniel Kaplan] as a perpetual [defendant], and the danger of confusion of issues and misleading the jury, i.e., making unclear whether [Daniel's related civil enforcement actions] are part of this trial." *Morrison v. Ocean State Jobbers, Inc.*, 180 F. Supp. 3d 190, 193 (D. Conn. 2016); *United States v. Wittig*, No. 03-cr-40142(JAR), 2005 WL 1227938, at *3 (D. Kan. May 23, 2005) ("The criminal trial is not the appropriate venue to try the civil arbitration proceeding. Moreover, injecting the civil arbitration into the criminal trial will confuse issues and the jury.")

Third, evidence or argument as to purported violations of internal ██ policies or civil regulations will unduly consume trial time and distract and confuse the jury. *See United States v. Anderson*, 933 F.2d 1261, 1276 (5th Cir. 1991) (precluding defendant from introducing evidence of a witness's pending civil lawsuit against defendant for bias because it would "confuse the issues for the jury or unduly consume time"). For example, if ██ witnesses are permitted to testify as to Daniel Kaplan's alleged non-compliance with company policies, Daniel will have to rebut such testimony by pointing to the ample Rule 16 and 3500 evidence that ██ in fact, failed to formalize, implement, and convey any such policies adequately. *See, e.g.*, GX-3500-██-1 at 193 (██████ "████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████"); *id.* at 196–97 ("████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████"); *id.* at 108–10 (testifying that ██ 's maximum annual fee was three percent of assets under management and that he "████████████" providing guidance to advisor representatives on what factors to consider in determining fees, but thinks he would have done so through "████████████████████████████████

████████████████"); *see also* GX-3500-██-1 at 56 (██████ "████████████

████████████████████████████████████████████

████████████████████████████████████████████

14

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████"); *id.* at 71–72

("████████████████████████████████████████████████

██████████████████████████████████████████").[3]

Permitting such evidence or argument will inevitably lead to a mini-trial on the sufficiency of

███'s policies and supervision and whether Daniel engaged in any alleged *non-criminal*

violations, wasting time and leading the jury astray.

Finally, even if the charging documents, decisions, and filings in the parallel civil actions

were relevant and more probative than prejudicial (and they are not), the documents are

inadmissible hearsay. *United States v. Klein*, No. 16-cr-442 (JMA), 2017 WL 1316999, at *10

(E.D.N.Y. Feb. 10, 2017) ("In sum: evidence concerning the SEC complaint or charging decision

is inadmissible hearsay and, even if it did fall within an exception to or exclusion from the

hearsay rule, it would present a danger of unfair prejudice and confusion that would substantially

outweigh any probative value.").

---

[3]      The 3500 also makes clear that the ███ witnesses will offer conflicting testimony, further confusing the issues and the jury. *Compare* GX-3500-███-1 at 279 (answering if he was getting written reports on ███'s investigation and heightened supervision of the Kaplans: "███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████"), *with* GX-3500-███-1 at 76 (stating she was not responsible for investigating complaints, and only "████████████████████████████████████████ " were).

15

## VII. Motions Under FREs 401 and 403.

### A. The Court Should Exclude Testimony Concerning ▮▮▮▮▮▮▮▮ as Irrelevant and Confusing.

The government should be barred from introducing evidence as to "▮▮▮▮▮▮▮▮," the independent registered investment advisor owned and operated by Adam and Daniel's father. Based on the 3500, we anticipate the government may elicit testimony from former clients—some of whom assert they were also clients of ▮▮▮▮▮▮▮▮—as to ▮▮▮▮▮▮▮▮. *See, e.g.,* GX-3500-▮▮-2 at 1 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); GX-3500-▮▮-4 at 4 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮").

Evidence concerning ▮▮▮▮▮▮▮▮ has no bearing on the issues in this case and is irrelevant under Rule 401. Such testimony or evidence should additionally be excluded under Fed. R. Evid. 403 because it constitutes improper evidence as to uncharged conduct and poses an overwhelming risk of prejudicing Daniel Kaplan and confusing the jury. The risk of confusion is particularly pronounced here, given that ▮▮▮▮▮▮▮▮ shares both defendants' surname and was a family member's business. Permitting the government to introduce evidence regarding ▮▮▮▮▮▮▮▮ will necessarily lead to litigation over collateral issues—such as the history, ownership, and structure of ▮▮▮▮▮▮▮▮, Adam and Daniel's role in ▮▮▮▮▮▮▮▮ (if any) and the role of their father, and any uncharged allegations of misconduct as to Adam, Daniel, or others. The result will be undue delay and distraction, prejudicing Daniel and depriving him of a fair trial.

**B.** **The Court Should Bar Evidence from Referring to "the Kaplans" Where The Evidence Does Not Specify Which Defendant, if Either, Undertook an Alleged Action Because Such Evidence is Unduly Confusing and Prejudicial.**

The 3500 material is rife with examples showing that most (if not all) witnesses cannot distinguish between Adam and Daniel Kaplan but will nevertheless testify as to actions allegedly taken by "the Kaplans." *See, e.g.*, GX-3500-████-5 at 1 (noting ████████ said she cannot tell Adam and Daniel apart, despite knowing them for ten years); GX-3500-████-3 (referring to "the Kaplans"); GX-3500-████-4 at 1 (stating ██████ "██████████████████████," but consistently stating "the KAPLANS" took certain actions); GX-3500-████-3 at 3 (repeatedly claiming "the Kaplans" took certain actions). *See generally* GX-3500-████-1 (claiming "the Kaplans" took certain actions, throughout); GX-3500-████-1 (same). The Rule 16 discovery suggests the government will seek to introduce documentary evidence that likewise conflates Adam and Daniel Kaplan. While testimony that Adam *or* Daniel undertook an alleged action may, in certain circumstances, be permissible, statements and documents claiming that "the Kaplans" did so should be precluded. Such evidence introduces overwhelming risks of juror confusion and prejudice—and exacerbates the already substantial risks posed by Adam and Daniel's indistinguishable appearances and the reality that much of the evidence refers to either of them only by their common surname.[4] Fed. R. Evid. 403. The government cannot rely on evidence referring to Adam and Daniel Kaplan as a single unit as a shortcut, where witnesses cannot tell the defendants apart or documentary evidence fails to do so. Indeed, the Court has already recognized as much. *See* July 23, 2025 Hrg. Tr. at 46 (Counsel: "The evidence shows

---

[4] Such testimony would also contravene Rule 602's personal knowledge requirement by impermissibly permitting witnesses to attribute to both twins actions they cannot definitively attribute to either. For example, a witness should not be permitted to testify that she spoke to "the Kaplans" on the phone or that "the Kaplans" allegedly conducted certain transactions to mask the fact that she does not know whether she spoke to Adam or Daniel, or which brother allegedly participated in the relevant transactions.

that many, if not all, of the people with whom [Adam and Daniel] interacted during the relevant period, this includes employers, clients, financial institutions, even the Government, have treated them as essentially the same person, which, of course, is not true and cannot be how they're treated at trial. It's –" Court: "They certainly can't be referred to that way at trial.").

C.   **The Court Should Not Permit the Government to Present Testimony from Twenty-four Former Clients Because Such Testimony Would be Cumulative and Unduly Prejudicial.**

The government's preliminary witness list includes many more purported victims than the victims specifically (though pseudonymously) identified in the Superseding Indictment, ECF No. 149. The Superseding Indictment alleges that the Kaplans (again, without differentiating between them) "defrauded at least 50 clients" but describes only eight specific individuals, Victims 1-8, as the "Advisory Victims," clients who had assets managed by the Kaplans or were beneficiaries of a trust account managed by the Kaplans (again, collectively). *Id.* ¶¶ 8–14. The Superseding Indictment describes four additional victims, Victims 9-12, as "Post-Advisory Fraud Scheme Victims." *Id.* ¶ 15. Count One, conspiracy to commit wire fraud, Count Twelve, investment advisor fraud, concern the alleged Advisory Victims 1-8. *Id.* ¶¶ 34, 38. Counts Two through Eleven, the substantive wire fraud counts, concern only Victims 1-5. *Id.* ¶ 36. Count Eighteen, conspiracy to commit wire fraud, relates only to the "Post-Advisory Fraud Scheme Victims," Victims 9-12 and the remaining counts do not pertain to specific, identified victims.

The government's current witness list includes twenty-four alleged victims. In addition to Victims 1-8 in the Superseding Indictment, the witness list includes eleven additional individuals who are purported additional Advisory Victims. These additional eleven Advisory Victims[5] are

---

5   The additional alleged Advisory Victims identified on the government's witness list but not pseudonymously identified in the Superseding Indictment include ███████████ , ██████████ ████████████ , ████████████ , ████████████ , ████████████ , ██████████ ,

only plausibly relevant to the conduct charged in Counts One and Twelve of the Superseding Indictment and are irrelevant to the other nineteen charges.

The Court should not permit the government to present testimony from all eleven of the additional alleged Advisory Victims on the government's preliminary witness list. Unlike the substantive wire fraud counts, Counts Two through Eleven, where the government must prove allegations that the Kaplans defrauded a particular person in a particular manner, the government need not prove that any particular person or any specific number of people were allegedly defrauded in Counts One and Twelve. In other words, evidence that establishes beyond a reasonable doubt that a single person was defrauded by the conduct alleged in Counts One and Twelve is sufficient for a conviction on each count. Furthermore, to the extent the government intends to seek an enhancement at sentencing for alleged substantial hardship to more than ten victims pursuant to 2B1.1(b)(2)(A)(iii) of the United States Sentencing Guidelines, the government may do so even without presenting testimony from ten or more victims at trial. While the government has latitude to determine how it wishes to present its case, this Court has discretion to exclude relevant evidence if it is cumulative under Fed. R. Evid. 403—that is, evidence that "replicates other admitted evidence." *United States v. Jamil*, 707 F.2d 638, 643 (2d Cir. 1983). The Court should use its discretion to preclude the government from wasting time by needlessly presenting repetitive evidence of the same alleged fraud schemes, particularly where the sheer number of victims testifying creates substantial prejudice against Daniel Kaplan. *See United States v. Brady*, 26 F.3d 282, 287 (2d Cir. 1994) (noting evidence is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis" rather than on the evidence

_____

██████████████, █████████, █████████ (as associated with █████), and
█████.

presented); *see also Old Chief v. United States*, 519 U.S. 172, 180 (1997) (explaining unfair prejudice as to a criminal defendant "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged").

### D. The Court Should Exclude Evidence Concerning Daniel Kaplan's Income and Assets as Unduly Prejudicial.

Daniel Kaplan anticipates that the government may attempt to introduce evidence of his wealth and income, including his salary at ▮▮ as a means to rouse the jurors' sympathy for the alleged victims and bias against Daniel Kaplan. It should not be permitted to do so.

First, Daniel Kaplan's wealth and non-▮▮ income, including assets and income that are not plausibly connected to the alleged conduct in this case, like inheritances from family members and dividends from investments, is entirely irrelevant to the charged conduct. Evidence is relevant only if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Daniel Kaplan's wealth and other income is not probative of any fact of consequence in this action—it is not "probative of any financial incentive [Daniel Kaplan] may have had to participate" in the alleged conduct, and it does not make whether he participated in the alleged conduct more or less probable. *See United States v. Ferguson*, No. 06-cr-137 (CFD), 2007 WL 4240782, at *1 (D. Conn. Nov. 30, 2007).

Second, evidence of Daniel Kaplan's wealth and other income is unduly prejudicial under Fed. R. Evid. 403 and risks igniting juror bias against wealthy financial services executives. *United States v. Stahl*, 616 F.2d 30, 32–33 (2d Cir. 1980) (reversing conviction based on prosecutor's "persistent appeal[s] to class prejudice" in arguments to the jury concerning the defendant's alleged wealth and greed). Because evidence of Daniel's wealth and other income

has no probative value and poses meaningful potential prejudice to him, the Court should exclude it from trial.

The same is true for the precise amount of money Daniel Kaplan earned in salary from ▮. That Daniel was well-compensated for his work does not make his alleged commission of the charged offenses more or less likely. While evidence concerning the *structure* of Daniel's salary, for example that he could potentially earn more money in salary while at ▮ by bringing on more clients, could be probative of motive, the actual amount of his salary is not probative under Fed. R. Evid. 401 and its admission would be unduly prejudicial under Fed. R. Evid. 403; *Ferguson*, 2007 WL 4240782, at *1 (excluding evidence of defendant's personal wealth as irrelevant and unduly prejudicial, but permitting evidence of defendant's deferred compensation plan for potential relevance to motive).

### E. The Court Should Exclude Irrelevant, Inflammatory Testimony from Former Clients Concerning Alleged Harms to Their Mental Health and Well-Being.

There is a similar risk that the government will seek to arouse sympathy for the alleged victims by eliciting testimony about the effect their dealings with either Adam or Daniel Kaplan had on their mental health and well-being. For substantially the same reasons as those discussed above, the Court should exclude witness testimony as to how Adam or Daniel's alleged misconduct affected them. Daniel Kaplan has good reason to believe the government will elicit such testimony based on the 3500 material. *See, e.g.*, GX-3500-▮-3 at 2 (named trial witness stating, "▮" has been "▮" and "▮" had she been unable to repay her line of credit). Such testimony is not probative of any fact at issue in this case and poses an overwhelming risk of prejudice. District courts should "carefully consider the prejudicial potential of [victim impact] testimony" and only admit such evidence "to prove an

21

element of the charged offense." *United States v. Hendricks*, 921 F.3d 320, 329 (2d Cir. 2019) (determining the district court erred in permitting testimony as to how bank employees felt weeks after the alleged robbery, even where committing the crime "by intimidation" was an element of the crime, but that the error was harmless). Here, unlike in *Hendricks*, the psychological impact of the alleged misconduct on a victim is irrelevant to the wire fraud or money laundering crimes charged. Such testimony, instead, would serve only to elicit juror sympathy improperly and to unfairly prejudice Daniel Kaplan.

> **F.** **The Court Should Not Permit the Government to Characterize Alleged Conduct as a "Ponzi" Scheme or to Refer to Payments as "Ponzi-like" Payments.**

Daniel Kaplan moves, in furtherance to Adam Kaplan's motion, to preclude the government entirely from eliciting testimony or making arguments that Daniel engaged in a "Ponzi scheme" or made "Ponzi-like" payments. On numerous occasions, the government has alleged that the Kaplans made "Ponzi-style payments." *See, e.g.*, ECF No. 198 at 5; ECF No. 82 at 2, 4, 17. Any testimony or arguments discussing a Ponzi scheme or Ponzi-payments, however, are not relevant to the underlying charges at issue, which do not include any allegation that the Kaplans engaged in a Ponzi scheme. Furthermore, the probative value of testimony and/or references to a so-called Ponzi scheme or Ponzi-style payments is vastly outweighed by its prejudicial effect, as the risk of misleading and confusing the jury with the negative connotations of such an inflammatory, nebulous term of art will undermine the jury's deliberations.

## VIII. The Court Should Sequester Witnesses Under FRE 615.

Consistent with Fed. R. Evid. 615, Daniel Kaplan moves to exclude witnesses from the courtroom so that they cannot hear other witnesses' testimony.

## CONCLUSION

Daniel Kaplan respectfully reserves the right to make additional objections at trial, as well as to move for further *in limine* rulings once the government provides its exhibit list, and if the government modifies its witness list and/or produces additional 3500 material.

Dated: New York, New York
      August 15, 2025

                           SHER TREMONTE LLP

                           */s/ Michael Tremonte*
                           Michael Tremonte
                           Noam Biale
                           Alexandra Conlon
                           Claire Blumenthal Buck
                           90 Broad Street, 23rd Floor
                           New York, New York 10004
                           Tel: 212.202.2600
                           Email: mtremonte@shertremonte.com
                           *Attorneys for Daniel Kaplan*