

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

PGS/AT/RMU
F. #2022R00047

*610 Federal Plaza*
*Central Islip, New York 11722*

September 18, 2025

<u>By E-mail and ECF</u>

The Honorable Joan M. Azrack
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:    <u>United States v. Adam Kaplan and Daniel Kaplan</u>
              <u>Criminal Docket No. 23-293 (S-1)(JMA)</u>

Dear Judge Azrack:

      The government respectfully submits this letter in response to Your Honor's order to respond to the defendant Adam Kaplan's motion to suppress (the "Motion"). For the reasons stated in the government's opposition to the defendants' motions <u>in limine</u> (ECF No. 267 – the "MIL Opposition") and the government's opposition to the defendants' pretrial motions (ECF No. 198 – the "Pre-Trial Opposition" and with the "MIL Opposition" the "Oppositions"), the defendant's Motion should be denied in its entirety.

      <u>First</u>, as the defense has repeatedly conceded, statements made by the defendant Adam Kaplan prior to April 2024 are not subject to suppression. Those include the statements in the Motion at page 5, which are from March 2024.

      <u>Second</u>, as the defense has repeatedly conceded, the Sixth Amendment right to counsel is violated only when someone "**acting as a Government agent** [] deliberately elicits incriminating statements from an accused in the absence of counsel." Motion at 2 (emphasis added). The Oppositions have made clear that CC-1 was not a government agent by any standard found in any court. As they did previously, the defense again cites <u>United States v. Pannell</u>, 510 F. Supp. 2d 185 (E.D.N.Y. 2007) and <u>United States v. Henry</u>, 447 U.S. 264 (1980) to argue that CC-1 was a government agent for purposes of <u>Massiah</u>. The government addressed those cases at length in the MIL Opposition, and for those reasons, the motion to suppress should be denied.

      To be clear, as stated in the MIL Opposition, the defense ignores that in <u>Panell</u>, the potential government agent was a formal cooperator – an individual who had signed a cooperation agreement with the government. <u>Panell</u> at 187. Here, the defense argues that CC-1 was a government agent from the moment that he first understood that law enforcement was interested

in talking to him. The defense does not cite a single case for that proposition. Moreover, as stated in the MIL Opposition, in its discussion of the <u>Massiah</u> analysis, the <u>Panell</u> court stated:

> The Second Circuit has held that an informant becomes a government agent "only when the informant has been instructed by the police to get information about the particular defendant." <u>United States v. Birbal</u>, 113 F.3d 342, 346 (2d Cir.1997). Because "[t]he <u>Massiah</u> rule covers only those statements obtained as a result of an intentional effort on the part of the government [,] ... information gotten before the inmates became agents/informants is not protected by the rule." [<u>United States v.</u>] <u>Stevens</u>, 83 F.3d [60,] 64 (2d Cir.1996) (emphasis in original).
>
> <u>United States v. Pannell</u>, 510 F. Supp. 2d 185, 189 (E.D.N.Y. 2007).

Again, CC-1 was not a government agent based on the analysis of <u>Panell</u>, cited by the defense – other than one recording (in May 2024), he was not instructed by law enforcement to gather evidence about the defendant – and in fact, he was specifically instructed that he was not acting on behalf of law enforcement, and he was instructed to not commit any crimes.[1]

In <u>Henry</u>, the Court found that the potential government agent was an inmate who, prior to meeting with the defendant, had been engaged as a paid informant. <u>Id.</u> at 266. Law enforcement had specifically told the potential government agent to "be alert to any statements made by the federal prisoners" around him. <u>Id.</u> And the potential government agent was paid for furnishing the information. <u>Id.</u> None of that is present here – CC-1 was not a paid informant and was not paid for providing any information from the defendant. Instead, post-April 2, 2024, the government began meeting with CC-1, who was providing information to the government, which the government was evaluating for truthfulness.

The defense does not cite a single case that an individual was acting as a government agent when that individual did not have a formal agreement with the government and/or was not being paid by the government. And the defense does not cite a single case that the government "should have known that such propinquity likely would lead to that result" in cases

---

[1] As stated in the Pre-Trial Opposition, that May 2024 call was regarding an ongoing bank fraud, and fraud against additional individuals, that the defendant was perpetuating. Immediately before that call, CC-1 was specifically instructed by law enforcement not to discuss anything relating to the case that the defendant was arrested for. And shortly after that call, the government specifically instructed CC-1 that CC-1 was not working for the government and did not instruct CC-1 to take any steps to gather information or elicit statements from the defendant.

where a defendant was not incarcerated. This Court should not adopt the defendant's newly imposed rules.[2]

Third, because the Sixth Amendment right to counsel is "offense specific," and no constitutional violation arises from the questioning of a represented defendant with respect to criminal conduct for which the right to counsel has not attached (McNeil v. Wisconsin, 501 U.S. 171, 175 (1991)), even if CC-1 were a signed-up and paid informant (CC-1 was not), any statements made by the defendant to CC-1 about Counts 18, 19, 20, and 21 in the superseding indictment are admissible.

Although the defense attempts to show that the communications in the government's proffer were about crimes charged in the original indictment, there can be no doubt that CC-1 and the defendant were engaged in ongoing frauds together, and their communications reflected that. It is true that the defendant repeatedly defrauded victims that he had defrauded before engaging in new crimes with CC-1. The defendant should not be able to use that fact as a sword in his favor. For example, regarding the July 2024 call in the government's proffer, that call took place after the victims had sent approximately $5,000 in March 2024 pursuant to CC-1 and the defendant's new scheme.

Fourth and finally, the defense argues that "all other" communications between CC-1 and the defendant post-April 2, 2024 should be suppressed or proffered in more detail. The defense argues that the government's proffer "deprives" the Court's order of "any meaning at all". But the government's proffer complied with the Court's order. The Court ordered that the government proffer to the Court the post-April 2, 2024 statements involving CC-1 that the government intends to introduce, the date of those statements, the formats of those statements, and what they are being introduced for. See September 9, 2025 Transcript at 373:23-374:4. The government provided that and more. The government's proffer, and the attachments, provided the dates and formats of every text communication between CC-1 and the defendant, 3500 material that includes CC-1's testimony, and a recording. The government also explained why it intended to introduce those full chains of messages, and the government even provided an in-depth overview of weeks of those messages. The defense seems to believe that the Court ordered the government to provide text-by-text explanations for thousands of pages of text messages in three days. The government disagrees.

---

[2] The defense also mentions a supposedly close relationship between CC-1 and the defendant, ignoring that CC-1 and the defendant were both defrauding each other during this period and blaming each other to victims for stolen victim funds.

3

For the foregoing reasons, the Court should deny the defendant's motion in its entirety without a hearing.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:  /s/
Adam R. Toporovsky
Paul G. Scotti
Rebecca M. Urquiola
Assistant U.S. Attorneys
(631) 715-7846 (Toporovsky)

4